# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Cameron L. Regan and Louis Impagliazzo, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 24-CV-8430 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| Christopher F. Adolf, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This litigation springs from a dispute over a ten-thousand-dollar bill to repair a rare car. That dispute between the plaintiffs, the car owners, and a repair shop in Lakemoor, Illinois, eventually led to the arrest and eighteen-month prosecution, on a charge of passing a bad check, of one of the two plaintiffs, Cameron L. Regan. On the eve of his criminal trial, Regan paid the repair bill in full, and the prosecutor dismissed the criminal case against him with prejudice. *See* Compl. ¶¶ 98–100, Dkt. No. 1. Representing themselves, Regan and the car's co-owner, plaintiff Louis Impagliazzo, filed a complaint in this court under 42 U.S.C. § 1983 and Illinois law against The Village of Lakemoor, Illinois ("the Village"); Lakemoor police officer Christopher F. Adolf; the repair shop, SDR Garage, Inc. ("SDR Garage"); and its owner, Francis Reyes. Compl. 1.

The court has before it two motions attacking the complaint's sufficiency under the applicable Federal Rules of Civil Procedure (cited as "Rule" in this order). Reyes and SDR Garage move under Rules 12(b)(1) and 12(b)(6) to dismiss the complaint against them for lack of subject matter jurisdiction and failure to state a claim. Dkt. No. 17. Adolf and the Village ask the court to strike the complaint under Rule 12(f), arguing that the complaint, which spans 34 pages and consists of 241 paragraphs, is excessively verbose. *See* Dkt. No. 23 at 1–2. For the reasons discussed herein, the court denies both motions with one exception. Co-plaintiff

Impagliazzo has not shown that he has standing to seek financial redress for an out-of-pocket loss suffered by plaintiff Regan.

## I.  BACKGROUND

For purposes of deciding the pending Rule 12(b)(1) and 12(b)(6) motions, the court accepts the complaint's well-pleaded facts as true and draws all reasonable inferences from those facts in plaintiffs' favor.  *See, e.g.*, *Nw. Ill. Area Agency on Aging v. Basta*, 145 F.4th 695, 697 (7th Cir. 2025) (citing *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022)) (Rule 12(b)(6)); *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023) (citing *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021)) (Rule 12(b)(1)).  The following factual recital comes from the complaint construed in accordance with the Rule 12(b)(1) and 12(b)(6) standards.

Plaintiffs Regan and Impagliazzo live in Chicago.  *See* Compl. ¶¶ 5–6.  Defendant Reyes owns SDR Garage, an auto repair business in Lakemoor, a village in Lake County about 51 miles from Chicago.  *See* Compl. ¶ 2.

In 2022, plaintiffs hired Reyes and SDR Garage to perform engine repairs on their 1994 Mazda AZ-1, a rare vehicle.  *See* Compl. ¶¶ 2, 17–21.  Six months of delays allegedly plagued the repair (which Reyes originally estimated would take two-to-three weeks of part-time work), and plaintiffs attribute the delays to SDR Garage's incompetence and mismanagement.  *See* Compl. ¶¶ 18–24.  Reyes texted Regan and Impagliazzo on September 7, 2022, to say that he had gotten the Mazda running and later boasted that the car "runs amazing."  Compl. ¶ 22.  Reyes told plaintiffs that the Mazda was ready to be picked up.  *Id*.

Regan and Impagliazzo drove to SDR Garage to retrieve the Mazda on September 23, 2022.  Compl. ¶ 23.  Reyes presented plaintiffs with a $10,322.24 invoice, a figure plaintiffs allege was more than three times the agreed price.  *See* Compl. ¶¶ 20, 24–25.  Regan paid the price under protest and allegedly under threat that the Mazda would be sold immediately to cover the debt if they did not pay.  *See* Compl. ¶¶ 24–28.  A dispute followed.  After driving the Mazda

for a short time, plaintiffs "quickly realized that Reyes had grossly misrepresented the Mazda's . . . condition. The Mazda's engine—the primary focus of SDR Garage's work and the only part of the vehicle that had an issue at the start of service—ran rougher than ever, consistently backfired, and produced a strong smell of burnt coolant." Compl. ¶ 31. Regan and Impagliazzo returned to SDR Garage, intending to have the Mazda inspected by a third party and negotiate with SDR Garage about the repair. *See* Compl. ¶ 33. A shouting match between Regan and Reyes eventually erupted, during which Regan told Reyes not to cash the check, and Reyes said he would contact the police if plaintiffs did not pay the invoice in full. *See* Compl. ¶¶ 32–36.

Regan's checking account had enough money in it to cover the check when he wrote it and gave it to Reyes, but the check did not clear when Reyes attempted to cash it because Regan, on the advice of an attorney, later transferred his checking account balance to his savings account. *See* Compl. ¶¶ 30, 36–38.

After attempting a self-help repossession of the Mazda in Chicago, Reyes contacted the Lakemoor police. *See* Compl. ¶¶ 43–47. "In his conversations with the police, Reyes omitted facts that would have made it obvious that the dispute was not a criminal matter . . . ." Compl. ¶ 46 (listing details allegedly omitted); *see also* Compl. ¶¶ 48–50. Defendant Adolf advised Reyes not to accept partial payment lest "the matter become civil." Compl. ¶ 50. In a voicemail message and by letter, Adolf threatened to arrest Regan unless he paid the invoice in full by October 7, 2022. Compl. ¶¶ 51–52. Regan hired an attorney and put the full invoiced amount in an escrow account. Compl. ¶¶ 52–53. Regan's attorney called Adolf and advised him that this was a civil dispute, but Adolf replied that it would become civil when Reyes was paid. *See* Compl. ¶¶ 53-55. Reyes tried to redeposit the check on or about October 20, 2022, but it was returned marked "stop payment." *See* Compl. ¶¶ 57–60.

Adolf then subpoenaed Regan's checking account statement from his bank. Compl. ¶¶ 61, 71. The statement showed that Regan had sufficient funds (more than $49,000) to cover the check when he wrote it at about 2:50 in the afternoon on September 23, 2022. Compl. ¶ 64.

3

But, despite being told by Regan and his lawyer that the check was written on September 23, 2022, Adolf wrote in his report dated November 7, 2022—and later represented to two assistant state's attorneys—that the check was written on September 26, 2022, by which time Regan had transferred funds to his savings account so that Regan's account statement showed that he had about $164 in his checking account on the date stated in Adolf's report.  *See* Compl. ¶¶ 62–66, 71–73.  Based on this incorrect date, Adolf, with the approval of prosecutors, swore out a criminal complaint against Regan on February 15, 2023.  *See* Compl. ¶¶ 73–79.  A judge issued a warrant for Regan's arrest; he was arrested, fingerprinted, and held in pretrial detention until he posted a $10,0000 bond.  *See* Compl. ¶¶ 81–84.  A grand jury indicted Regan on April 5, 2023.  Compl. ¶ 90.  The indictment charges that Regan wrote a check to SDR Garage on September 23, 2022, but plaintiffs allege before this court that the grand jury heard evidence predicated on the erroneous fact that Regan wrote it on September 26, 2022.  Compl. ¶ 90.  They also plead on "information and belief" that the grand jury did not consider evidence on the intent to defraud element of the crime with which Regan was charged.  Compl. ¶¶ 91–92.

The prosecution continued for eighteen months, despite Regan making multiple settlement offers to Reyes.  *See* Compl. ¶¶ 94–98.  The complaint in this case relates what happened next:

> 99. On August 21, 2024, the eve of the pretrial conference, [Regan] was faced with the choice of mounting an expensive and stressful defense at trial or giving in to Reyes's demands and issuing a check for the full amount of the disputed invoice.  [Regan]'s criminal defense attorney advised him to pay the disputed bill.  While refusing Reyes's bold offer of a mutual release, [Regan] issued a cashier's check for $10,322.24 to SDR Garage.
>
> 100. The next morning, a *nolle prosequi* was entered on [Regan]'s lone felony charge.  During the case's August 22, 2024 pretrial conference, ASA Tyler Mikan stated on the record that the dismissal of [Regan]'s charge was "with prejudice."

Compl. ¶¶ 99–100.

Regan and Impagliazzo's complaint has nine counts.  They bring their constitutional claims under 42 U.S.C. § 1983 and invoke this court's supplemental jurisdiction conferred by

4

28 U.S.C. § 1367(a) over claims arising under Illinois Law.  In the order they appear, the

complaint's' counts are:

1. A Fourth Amendment claim for unreasonable seizure (arrest) by Regan against Adolf;

2. A Fourteenth Amendment claim for fabrication of evidence brought by Regan against Adolf;

3. A Fourteenth Amendment claim brought by Regan alleging that Adolf and Reyes conspired to deprive Regan of his civil rights;

4. A *Monell* claim brought by Regan against the Village;

5. A claim under Illinois law for abuse of process brought by Regan and Impagliazzo against Reyes and SDR Garage;

6. An intentional infliction of emotional distress (IIED) claim under Illinois law brought by both plaintiffs against Reyes and SDR Garage;

7. A separate IIED claim in Count VII brought by Regan against Adolf;

8. A civil conspiracy claim under Illinois law brought by Regan and Impagliazzo against Adolf and Reyes; and

9. A statutory indemnity claim under 745 ILCS 10/9-102 brought by both plaintiffs against the Village.

In this court, Regan and Impagliazzo have represented themselves at all times.  They

have also sued Reyes and SDR Garage in the Circuit Court of Cook County.  *See* Verified

Compl., No. 24L009332 (Cir. Ct., Cook Cnty., Ill. Aug. 22, 2024), available in this record at Dkt.

No. 33-2; *see also* Dkt. No. 33-1 (docket sheet as of Dec. 19, 2024).

## II. MOTION TO STRIKE

Under Rule 12(f), a district "court may strike from a pleading an insufficient defense or

any redundant, immaterial, impertinent, or scandalous matter."  A complaint is a pleading.

Fed. R. Civ. P. 7(a)(1).  Rule 12(f) permits a district court to "either strike on its own or on a

motion by a party," and the Seventh Circuit has stated Rule 12(f) affords a district court

"considerable discretion in striking any redundant, immaterial, impertinent or scandalous

matter." *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1142 (7th Cir. 2009) (citing *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992)). However, Rule 12(f) motions to strike "are disfavored . . . because [they] potentially serve only to delay." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (citing *United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975)); *see e.g.*, *Remily v. Freedom Dev. Grp., LLC*, 2025 WL 1518057, at *3 (N.D. Ill. May 28, 2025). Although Rule 12(f) motions are rarely granted, the rule may be used properly in some circumstances to expedite litigation by "remov[ing] unnecessary clutter from the case." *Heller Fin.*, 883 F.2d at 1294.

In their Rule 12(f) motion, Adolf and the Village assert that the complaint's allegations "are grossly redundant, and largely consisting of repeated, subjective, descriptive personal attacks on the defendants." Dkt. No. 23 ¶ 4. If they are required to answer the complaint's 241 paragraphs, they say they will be forced to deny all allegations "[due] to the inextricable conflation and facts and personalities." *Id.* Adolf and the Village cite no examples of personal attacks or conflation of personalities in the complaint, however. *See id.*; Reply Supp. Mot. to Strike 1–2, Dkt. No. 28. The court has found no such allegations in the complaint.

The complaint here could be shorter, and it sometimes includes more factual detail than some attorneys would plead. Still, the extraneous details do not veer into the realm of *ad hominem* personal attack. As regards Adolf, the complaint focuses on alleging what Adolf was told about the dispute over the Mazda, his alleged interactions with Reyes concerning the investigation, what Adolf wrote in his report, and what evidence he presented to prosecutors and the grand jury. *See generally* Compl. ¶¶ 49–100. On their face, these allegations are pertinent, indeed central, to the claims alleged in the complaint. They constitute the bulk of the factual foundation on which the complaint's counts against Adolf and the Village rest. To be sure, the facts alleged concerning Adolf and the Village could be called scandalous in the sense that, if true, a reasonable observer would find the conduct of the investigation and prosecution of Regan outrageous. But many factual allegations in federal complaints fit that general description of

"scandalous." That the alleged facts, if true, might cause a reasonable reader to experience consternation, shock, or outrage does not necessarily mean the allegations should be stricken under Rule 12(f). Rather, "Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot,* 961 F.2d at 664 (citations omitted). The potentially outrageous factual allegations against Adolf (which, again, the court emphasizes are merely allegations at this stage) play a central role in the controversy framed in the complaint, and Adolf and Reyes have not identified any prejudice they will suffer other than having to file an answer, which is plainly insufficient by itself to justify striking a pleading.

Finally, the instant motion to strike references ¶ 5, the "short and plain statement" standard, discussed more fully below, for stating a claim under Rule 8(a)(2). The Supreme Court has been clear that a Rule 12(b)(6) motion for failure to state a claim is the proper vehicle for testing a complaint's sufficiency under Rule 8(a)(2). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The distinction between Rule 12(b)(6) motions to dismiss and Rule 12(f) motions to strike has a practical upshot for litigants (not just first-year civil procedure students). That is because Rule 12(g)(2) limits the manner and timing in which a litigant may raise the defense of failure to state a claim. In contrast, "Courts have read Rule 12(f) to allow a district court to consider a motion to strike at any point in a case, reasoning that it is considering the issue of its own accord despite the fact that its attention was prompted by an untimely filed motion." *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 973 F. Supp. 2d 842, 845 (N.D. Ill. 2014) (citing *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1399 (7th Cir. 1991)). Rule 12(g)(2)'s provisions limiting when and how the defense of failure to state a claim may be raised could be bypassed if Rule 12(f) were interpreted as permitting a party to argue at any time that the complaint does not satisfy the "short and plain statement" standard of Rule 8(a)(2).

For all of these reasons, Adolf and the Village have failed to demonstrate that the complaint should be stricken under Rule 12(f). The Rule 12(f) motion is denied.

### III. Standing

Reyes and SDR Garage move the court to dismiss all counts of the complaint in which they are named.  *See* Mem. Supp. Mot. to Dismiss 1–2, Dkt. No. 18.  They group their arguments under six headings and raise one jurisdictional challenge to Impagliazzo's standing to sue under Article III of the Constitution.  *See id.* at 3–10.  The balance of their arguments test the complaint's sufficiency to state a claim under Rule 12(b)(6).  The court begins, as it must, with the jurisdictional requirement of Article III standing.

### A. Governing Law

Article III of the Constitution limits the jurisdiction of the federal courts to "cases" or "controversies."  U.S. Const. Art. III, § 2, cl. 1.  The doctrine of standing enforces this case or controversy requirement.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–62 (1992); *see also Winkler v. Gates*, 481 F.3d 977, 979–80 (7th Cir. 2007).  Because Article III standing is a necessary ingredient of subject matter jurisdiction, standing must be established before the court can reach merits issues, such as the pending motion to dismiss portions of the complaint for failure to state a claim.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1992); *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 277–78 (7th Cir. 2020) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

Standing "is not dispensed in gross;" it must be shown "for each claim . . . and for each form of relief [sought] (for example, injunctive relief and damages)."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); other citation omitted).  Plaintiffs must establish three elements that together comprise "the irreducible constitutional minimum of standing."  *Lujan*, 504 U.S. at 560.  These elements are: (i) that the plaintiff "suffered an injury in fact that is concrete, particularized, and actual or imminent;" (ii) "that the injury was likely caused by the defendant;" and (iii) "that the injury would likely be redressed by judicial relief."  *TransUnion*, 594 U.S. at 423 (citing *Lujan*, 504 U.S. at 560–61).  "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence

required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (citations omitted). Later in the case, at the summary judgment stage for example, the plaintiff must demonstrate standing by "'set[ting] forth by affidavit or other evidence specific facts' that, taken as true, support each element of standing." *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020) (brackets in original) (quoting *Lujan*, 504 U.S. at 561); *see also TransUnion*, 594 U.S. at 423; *Bazile*, 983 F.3d at 278.

A Rule 12(b)(1) motion raises either a facial or factual challenge to subject matter jurisdiction. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009)). Significant differences exist between the standards that apply to facial and factual challenges. *See Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 557–58 (7th Cir. 2021). A facial challenge claims that the complaint's, or another pleading's, allegations are insufficient, while "[a] factual challenge contends that 'there is in fact no subject matter jurisdiction,' even if the pleadings are formally sufficient." *Silha*, 807 F.3d at 173 (emphasis omitted) (quoting *Apex Digit.*, 572 F.3d at 444). The parties do not discuss the distinction between facial and factual attacks, but Reyes and SDR Garage rely heavily on an exhibit attached to their motion to dismiss when attacking standing. *See* Dkt. No. 18-1. And plaintiffs attach exhibits to their response memorandum to show that Impagliazzo has standing. *See* Dkt. No. 22-1. Since both sides have gone beyond the complaint, the court analyzes the instant motion to dismiss as a factual attack on its subject matter jurisdiction.

"In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Silha*, 807 F.3d at 173 (citing *Apex Digit.*, 572 F.3d at 444). In analyzing the complaint, the court treats its well-pleaded allegations as true and draws reasonable inferences in favor of the plaintiffs. *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023) (citing *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021)).

**B. Third-Party Standing**

Reyes and SDR Garage do not challenge Regan's standing. Relying on the third-party standing doctrine, they contend that the complaint does not plausibly allege that plaintiff Impagliazzo suffered a concrete and particularized injury in fact fairly traceable to them. "In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) (brackets omitted) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). The Supreme Court has permitted litigants to rest standing on the interests of third parties in limited circumstances, but "the litigants themselves still must have suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute." *Id.* (citation modified) (quoting *Powers*, 499 U.S. at 411). Impagliazzo therefore cannot establish his standing by pointing to harms experienced solely by Regan, such as those flowing from Regan's criminal prosecution. As the Supreme Court put the matter, "plaintiffs must show that they possess 'a personal stake in the dispute' and are not mere bystanders." *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2133 (2025) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024)).

Three counts of the complaint assert a claim on Impagliazzo's behalf. They are: (a) the abuse of process claim in Count V; (b) the IIED claim in Count VI; and (c) the civil conspiracy claim in Count VIII.

**C. Abuse of Process Claim**

Beginning with the abuse of process claim in Count V, the complaint differentiates between the injuries Regan suffered from his criminal prosecution and those experienced by Impagliazzo. *See* Compl. ¶¶ 212–14. Both plaintiffs allege that they were "deprived of the use and enjoyment of their Mazda from February 2023 until August 2024" as a result of Reyes's initiation and continuation of the criminal case against Regan. Compl. ¶ 213. By itself, this is enough to plead an injury in fact suffered discretely by Impagliazzo, specifically a deprivation of state law-created property interest as a co-owner in the use and possession of the Mazda. The

dispositive rule is foundational: "No one could seriously dispute . . . that a violation of property rights is actionable" as an injury in fact. *TransUnion*, 594 U.S. at 448; *see id.* at 448–49 (noting that state law generally creates property rights).

Plaintiffs also plead in Count V that they paid SDR Garage the full invoiced amount to bring Regan's prosecution to an end, even though they believed SDR Garage was not entitled to receive the entire amount. Compl. ¶ 214. To be sure, Regan's out-of-pocket loss to Reyes constitutes an injury in fact fairly traceable to Reyes. *See In re Aqua Dots Products Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011). But the record shows that Impagliazzo did not pay Reyes any money. Rather, he wired Regan $11,000 on August 21, 2024, to cover Regan's check to SDR Garage without, as far as the record shows, the knowledge of Reyes and SDR Garage.[1] *See* Dkt. No. 18-1 Ex. A at 1 (cancelled check); Decl. of Impagliazzo ¶¶ 7–15, Dkt. No. 22-1; *id.* Ex. C. Impagliazzo alleges a financial loss, yes, but on this record, Regan's role as the financial intermediary breaks the chain of causation for standing purposes. *See Galban v. Inst. for Int'l Educ. of Students*, 2024 WL 3950216, at *4–5 (N.D. Ill. Aug. 26, 2024), appeal docketed No. 24-3021 (7th Cir. Nov. 6, 2024). Impagliazzo has failed to demonstrate that he has third-party standing to pursue the financial loss alleged in Count V.

**D. IIED and Civil Conspiracy Claims**

Count VI charges that Reyes threatened both plaintiffs with arrest and prosecution if they did not pay the entire invoiced amount. Compl. ¶ 219. Reyes's threats caused Impagliazzo fear that he would be arrested and prosecuted like Regan if he did not pay. *See* Compl. ¶¶ 220–22. "For nearly two years plaintiffs allege that they lived in a constant state of severe emotional distress. . . . [Impagliazzo] remained in a state of extreme anxiety and fear that Reyes would follow through on his threat to prosecute him as well." Compl. ¶ 225.

---

[1] The complaint says that plaintiffs were "in a relationship" but does not elaborate. *See* Compl. ¶¶ 146, 203. To the extent it is relevant (this is doubtful), neither the complaint nor Impagliazzo's declaration indicates that plaintiffs formed a corporation, partnership, or joint venture, or that they otherwise formalized an arrangement regarding the costs of maintaining the Mazda. In short, Impagliazzo's wire transfer appears on this record to have been a gift or loan.

Reyes and SDR Garage argue that Impagliazzo's fear of prosecution was not credible because only Regan signed the September 2022 check, so Impagliazzo could not be prosecuted for passing a bad check.  *See* Mem. Supp. Mot. to Dismiss 6, Dkt. No. 18.  This argument, which is supported by no citation to authority, borders on the frivolous.  For one thing, it discounts the nonfrivolous possibility that a basis could be found for charging Impagliazzo with aiding and abetting the felony offense with which Regan was charged.  *See generally United States v. Carr*, 107 F.4th 636, 642 (7th Cir. 2024) (discussing Illinois law on aiding abetting liability).

Additionally, construing the facts alleged in the complaint favorably to plaintiffs, Reyes and Adolf had demonstrated to plaintiffs that, due to their relationship and Adolf's position, they could initiate and maintain a criminal investigation and prosecution despite having shaky grounds for doing so.  *See* Compl. ¶¶ 49–55.  With this context, Impagliazzo has satisfied his burden to plead an injury in fact, that is, emotional distress from a credible fear of criminal prosecution, fairly traceable to Reyes, for "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," though they may not necessarily suffice at later stages of litigation.  *Lujan*, 504 U.S. at 560.  The standing challenge to Count VI fails.

Reyes's and SDR Garage's standing challenge to the civil conspiracy claim in Count VIII likewise fails.  This count alleges that Adolf and Reyes conspired to coerce plaintiffs to pay SDR Garage the invoiced amount and that they sought to achieve that goal by unlawful means.  *See* Compl. ¶¶ 233–38.  Reyes and SDR Garage protest that, as alleged, the conspiracy inflicted no concrete or particularized injury on Impagliazzo because only Regan was prosecuted, and only his name appeared on the August 2024 check written one day before his trial date.  *See* Mem. Supp. Mot. to Dismiss 5, Dkt. No. 18.  Here again, no citation to authority is provided. *See id.*  Reyes and SDR Garage conflate the alleged conspiracy's means with its objectives and the harm to both plaintiffs it is alleged to have caused.  Where a plaintiff claims to have been harmed by a conspiracy, Article III standing doctrine asks not only what the conspirators did to a particular plaintiff but also whether the harm to each plaintiff "is fairly traceable" to the

conspirator's conduct. *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 346 (7th Cir. 2022). Plaintiffs plausibly allege that the prosecution of Regan was intended to coerce both of them to pay SDR Garage and that both plaintiffs experienced "severe emotional distress" as a result of the prosecution. So, as alleged, investigating and prosecuting Regan was the means by which the conspirators sought to achieve their objective of getting both plaintiffs to pay up. *See* Compl. ¶¶ 234–38. The court has already explained why Impagliazzo's allegations of emotional distress are sufficient to establish standing and why they are fairly traceable to Reyes. The same reasoning applies equally to the tracing of those harms to the conspiracy pleaded in Count VIII.

Impagliazzo has adequately alleged his standing except as to the financial harm to Regan pleaded in Count V. Insofar as Impagliazzo seeks compensation for Regan's out-of-pocket loss, the complaint is dismissed for failure to establish Article III standing.

### IV. FAILURE TO STATE A CLAIM

Reyes and SDR Garage challenge the complaint's sufficiency on several grounds. For the reasons that follow, the court finds their arguments for dismissal to be either unpersuasive or forfeited as underdeveloped.

#### A. Rule 12(b)(6) Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the sufficiency of a complaint rather than the case's merits. *See Richards v. Mitcheff*, 696 F.3d 635, 637–38 (7th Cir. 2012). Rule 8(a)(2) requires every complaint, and every other pleading that states a claim for relief, to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

To withstand a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. When testing

a complaint's sufficiency, the court accepts the complaint's well-pleaded facts as true and draws reasonable inferences from those facts in the plaintiff's favor, but conclusory allegations that merely recite the elements of a claim do not enjoy a presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

As the Supreme Court and Seventh Circuit have "repeatedly emphasized," pleadings drafted by non-lawyers "should be held to standards less stringent than formal pleadings drafted by attorneys." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890 (7th Cir. 2016) (citing *Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014)). Reyes and SDR Garage at times appear to suggest that the plaintiffs here should not receive the benefit of leniency because their complaint and pleadings exhibit a level of sophistication indicative of receiving assistance from an undisclosed attorney. *See, e.g.*, Reply Supp. Mot. Strike 2, Dkt. No. 28. This argument rests on pure conjecture, and the court rejects it. In any event, nothing in this order hinges on whether the complaint here receives the benefit of the liberal construction afforded to a *pro se* filing.

**B. Shotgun Pleading**

The first argument raised in the instant motion to dismiss, that the complaint should be summarily dismissed as a "shotgun pleading," has little to recommend it. District courts sometimes use the phrase "shotgun pleading" as a shorthand for the discouraged practice of drafting a complaint in which each count "incorporates by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged are not material to the claim, or cause of action, appearing in a count's heading." *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011) (citation modified) (quoting *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n.22 (11th Cir. 2010)). To this court's knowledge, the Seventh Circuit has never used the phrase "shotgun pleading" in a published opinion. The "shotgun pleading" terminology merely captures a pattern of drafting that creates a fair notice problem under Rule 8(a)(2)'s "short and plain statement" standard. "Such pleadings make it 'virtually impossible to know which allegations of fact are intended to support which claims for

relief.'" *Id.* (brackets omitted) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

True, each count of the complaint in this case reincorporates the first 100 paragraphs, which identify the parties, state the basis of jurisdiction and venue, and plead facts common to all counts. *See, e.g.*, Compl. ¶ 110. "But the mere fact that a complaint's counts incorporate by reference each of the preceding factual allegations does not make the complaint an impermissible shotgun pleading, so long as the complaint adequately puts the defendants on notice of the claims against them." *SEC v. Winemaster*, 529 F. Supp. 3d 880, 907 (N.D. Ill. 2021) (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1324–25 (11th Cir. 2015); other citation omitted). The complaint here gives defendants the requisite fair notice. After incorporating the background facts, each count sets out additional and more specific facts supporting the claim pleaded in the count. *See, e.g.*, Compl. ¶¶ 101–12. In this way, the complaint follows a common pleading formula by laying a common factual foundation for all counts and then specifying additional facts that support each count. Reyes and SDR Garage point to no specific portion of the complaint they find unclear, and in their briefing, they exhibit no difficulty understanding the factual basis of each of the complaint's nine counts. The fair notice problem encapsulated by "shotgun pleading" cases does not plague the instant complaint, and it will not be dismissed on this ground. *See Winemaster*, 529 F. Supp. 3d at 906; *CustomGuide*, 813 F. Supp. at 1000–01.

**C. Conspiracy Claims (Counts III and VIII))**

In Count III, Regan brings a claim under 42 U.S.C. § 1983 against Adolf and Reyes, alleging that they conspired to deprive him of his Fourth and Fourteenth Amendment rights. *See* Compl. ¶¶ 129–62. Section 1983 permits a private plaintiff to bring suit for money damages for a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against a "person" acting "under color of" state law. 42 U.S.C. § 1983. To impose § 1983 conspiracy liability, Regan must plausibly allege that "(1) a state official and private individual(s) reached an understanding to deprive [him] of his constitutional rights, and

(2) those individual(s) were willful participants in joint activity with the State or its agents." *Green v. Howser*, 942 F.3d 772, 779 (7th Cir. 2019) (brackets omitted) (quoting *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019)). To plead the first element, a plaintiff must plausibly allege that two or more persons acted "in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988) (quotations omitted).

Count VIII asserts a claim under Illinois law for the tort of civil conspiracy. The court analyzes the complaint's conspiracy counts together because their elements do not differ as to the issues framed in the pending motion to dismiss. "In Illinois, a civil conspiracy is defined as 'a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means.'" *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 938 (7th Cir. 2012) (quoting *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)). To state a civil conspiracy claim under Illinois law, plaintiffs must "allege facts establishing both (1) an agreement to accomplish such a goal and (2) a tortious act committed in furtherance of that agreement." *Id.* at 939 (citing *McClure*, 720 N.E.2d at 258).

Reyes and SDR Garage argue that the complaint's conspiracy allegations are either scandalous, based on conjecture, or unsupported by the evidence. *See* Mem. Supp. Mot. to Dismiss 6, 10, Dkt. No. 18. They point specifically to the complaint's allegations "that Reyes harbors animus toward homosexuals, that he participated in fabricating evidence, and that he had a high level of involvement in the criminal case" as conjectural, adding, "Plaintiffs do not have a scintilla of evidence to support these allegations." *Id.* (citing no authority).

Reyes and SDR Garage would have this court require more detail in the complaint than Rule 8(a)(2)'s "short and plain statement" standard requires. "[E]vidence is not required at the pleading stage," and insisting that a plaintiff plead enough evidence to survive summary judgment is reversible error. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014).

16

"Indeed, litigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's proof leads to windy complaints and defeats the function of Federal Rule of Civil Procedure Rule 8." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citation modified) (quoting *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998)). Reyes and SDR Garage's arguments fail insofar as they fault the complaint for failing to plead enough evidence to go to trial on a conspiracy claim. This failure includes defendants' arguments that plaintiffs must plead anything more concerning Reyes and Adolf's intent, motivations, and state of mind, such as their alleged dislike of homosexuals. Rule 9(b) speaks clearly to this aspect of the argument for dismissal: "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Reyes and SDR Garage argue that the complaint does not plausibly allege an agreement. An agreement to form a conspiracy may be made "expressly or tacitly." *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (citing *Owens v. Evans*, 878 F.3d 559, 565 (7th Cir. 2017)). Similarly, under Illinois law, plaintiffs must plausibly allege that the defendant conspirators "understood the general objectives of the conspiratorial scheme, accepted them, and agreed, either explicitly or implicitly to do [their] part to further those objectives." *Stewart Info.*, 665 F.3d at 937 (citation modified) (quoting *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994)).

Reyes and SDR Garage cite *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204 (7th Cir. 1980), in which the Seventh Circuit affirmed the dismissal of a *pro se* plaintiff's § 1983 conspiracy claim. "Mere conjecture that there has been a conspiracy," the *Tarkowski* court reasoned, "is not enough to state a claim. A private person does not conspire with a state official merely by invoking an exercise of the state official's authority." *Id.* at 1208 (citation omitted). *Tarkowski* exemplifies the type of threadbare allegations that do not state a plausible conspiracy claim.

The case of *Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012), furnishes a contrasting example of a complaint held to plead a plausible tacit or express agreement. The

17

plaintiff in *Geinosky* brought a § 1983 conspiracy claim.  He alleged that he received 24 parking tickets, all for the same car, in a fourteen-month period.  *Id.* at 745.  The tickets, all of which a judge dismissed, were written by Chicago police officers in the same unit.  *See id.*  The Seventh Circuit held that this alleged pattern, coupled with the implausibility of several of the tickets (some implied that the car had been in two places at nearly the same time), stated a plausible § 1983 conspiracy claim that the officers had expressly or tacitly agreed to harass the plaintiff in violation of his constitutional rights.  *See id.* at 745, 749–50.  The Seventh Circuit stated that the complaint's conspiracy allegations went "well beyond the required threshold."  *Id.* at 749.

Viewed favorably to plaintiffs, the complaint here goes well beyond the mere conjecture held insufficient to state a claim in *Tarkowski*.  Indeed, the instant complaint makes out a stronger claim of a tacit agreement than did the complaint in *Geinosky,* for the complaint here describes specific conversations between Adolf and Reyes from which can be drawn a plausible inference of a tacit agreement.  The following well-pleaded facts more than suffice under *Geinosky* to make out a § 1983 conspiracy claim: (1) Reyes asked Adolf to help him obtain payment in full, Compl. ¶¶ 47–51; (2) Adolf told Reyes at the investigation's outset not to accept partial payment because "the case would become civil" if he did so, Compl. ¶ 50; (3) Adolf told Reyes on October 5, 2022, that he would continue the criminal case until the outcome satisfied Reyes, Compl. ¶ 56; and (4) Adolf wrote the incorrect date in his police report on November 7, 2022, in order to continue the investigation and pressure plaintiffs, despite the exculpatory bank records Adolf had received by that point, *see* Compl. ¶¶ 61–67, 75, 78.  As the Seventh Circuit explained in *Tarkowski*, "In many cases of conspiracy essential information can only be produced through discovery, and the parties should not be thrown out of court before being given an opportunity through that process to ascertain whether the linkage they think may exist actually does."  644 F.2d at 1208 (quoting *Lessman v. McCormick*, 591 F.2d 605, 611 (10th Cir. 1979)).  Because this is such a case, the motion to dismiss Counts III and VIII is denied.

18

### D. Abuse of Process Claim (Count V)

The tort of abuse of process "occurs where a party 'uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed.'" *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*; *AFL-CIO*, 942 F.3d 352, 365 (7th Cir. 2019) (quoting Restatement (Second) of Torts § 682 (1977)). "Under Illinois law, 'the only elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings.'" *Pace v. Timmermann's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 757 (7th Cir. 2015) (quoting *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173 (Ill. App. Ct. 2d Dist. 2004)). Illinois courts strictly construe the elements of an abuse of process claim, "as the tort of abuse of process is not favored under Illinois law." *Brian J. Wanca, J.D., P.C. v. Oppenheim*, 2023 IL App (1st) 220273, ¶ 57 (quotation omitted).

Reyes and SDR Garage argue that there is no factual basis for believing that Reyes "[had] the power to somehow control the criminal prosecution" of Regan, that the Lakemoor Police Department and McHenry County state's attorney conducted the investigation and prosecution, and that plaintiffs have not pleaded any ulterior motive beyond the "simple act of reporting the crime to police." Mem. Supp. Mot. to Dismiss. 7, Dkt. No. 18. No authority is cited supporting the proposition on which this argument hinges, namely, that plaintiffs must allege that Reyes had the power to control at every stage the investigation and prosecution of Regan. *See id.* Illinois caselaw teaches that stating an abuse of process claim does not require the civil defendant's control of every stage of the process; rather, "the [civil] defendant [must have] instituted proceedings against the plaintiff for [an improper] purpose 'such as extortion, intimidation, or embarrassment.'" *Oppenheim*, 2023 IL App (1st) 220273, ¶ 57 (citation omitted). The present complaint adequately alleges institution of process for an improper purpose when plaintiffs plead, repeatedly and plausibly, that Reyes reported Regan's bounced check to Lakemoor police to obtain leverage in a bona fide dispute over a repair bill. *See* Compl. ¶¶ 3, 37–47, 204. Again,

Reyes's motive and intent may be alleged generally at the pleading stage. Fed. R. Civ. P. 9(b). The complaint states a plausible abuse of process claim.

### E. Intentional Infliction of Emotional Distress Claim (Count VI)

The Seventh Circuit recently summarized the elements of a claim for IIED under Illinois law as follows:

> To prevail on an intentional infliction of emotional distress claim under Illinois law, a claimant must prove three elements. *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016). First, the conduct in question must be truly extreme and outrageous. *Id.* Second, the actor intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would have caused such distress. *Id.* Third, the conduct in fact caused severe emotional distress. *Id.* The tort "does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (quoting Restatement (Second) of Torts § 46 cmt.d (1965)). Liability is found only when "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 cmt.d (1965)).

*Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024) (paragraph break omitted).

Reyes and SDR Garage maintain that the allegations supporting each IIED element are conclusory and threadbare. *See* Mem. Supp. Mot. to Dismiss 9–10, Dkt. No. 18. They focus myopically on the recitals of the elements of an IIED claim in Count VI of the complaint. *See id.* Read in isolation, this portion of the complaint recites certain elements of an IIED claim in rote fashion. *See* Compl. ¶¶ 223, 225. However, as has been explained, allegations of Reyes's intent, such as ¶ 224 ("threats were made with the intent to incite fear in Louis and Cameron so that they would hand over $10,322.24 to SDR Garage."), suffice to plead motive and intent under Rule 9(b). *See also* Compl. ¶ 224.

Reyes and SDR Garage might have grounds for dismissal if ¶¶ 219–225 supplied the sole factual support for their IIED claim. But "courts must consider the complaint in its entirety" on a Rule 12(b)(6) motion. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted). The preamble to Count VI of the complaint in this case, ¶ 218, incorporates

by reference the substantial body of factual allegations preceding Count I. *See* Compl. ¶¶ 1–100. Nowhere in their memorandum of law supporting their motion to dismiss or in their reply do Reyes and SDR Garage develop a meaningful argument, under ¶¶ 1–100, that the well-pleaded facts underpinning Count VI fail to state an IIED claim. *See* Dkt. No. 18 at 9–10; Dkt. No. 27 at 12. In their briefing, Reyes and SDR Garage recite the elements of an IIED claim, affix the label "conclusory" to the paragraphs beneath Count VII, and make no effort to grapple with the substantial body of facts incorporated into Count VII. *See ibid.* That does not suffice to preserve defendants' arguments for dismissal of Count VII. This court will not do counsel's work for them by combing through the first 100 paragraphs of the complaint, researching Illinois IIED law, and developing arguments for and against dismissal. By failing adequately to develop an argument for dismissing plaintiffs' IIED claim, moving defendants have forfeited this issue under the rule that "perfunctory, underdeveloped, and cursory" arguments are waived. *Lanahan v. Cook Cnty.*, 41 F.4th 854, 865–66 (7th Cir. 2022) (citing *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020)); *see also White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (citing *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019)); *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 921–22 (7th Cir. 1997) (citing *Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995); other citation omitted). Count VI will not be dismissed.

## V. Conclusion

For the reasons stated, the motion to strike the complaint filed by defendants Christopher Adolf and the Village of Lakemoor is denied. The motion to dismiss the complaint filed by defendants Francis Reyes and SDR Garage, Inc., is denied in part. Consistent with this opinion, the motion is granted solely to the extent moving defendants seek dismissal for want of Article III standing of plaintiff Impagliazzo's claim for money damages in Count V. All other relief requested in this motion to dismiss is denied. The parties are instructed to confer in

accordance with Federal Rule of Civil Procedure 26(f) and file a Rule 26(f) conference report and proposed scheduling order within twenty-one days, by and including September 30, 2025.

Date: September 9, 2025                              /s/ Joan B. Gottschall
                                                    United States District Judge