**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CAMERON REGAN and<br>LOUIS IMPAGLIAZZO,<br><br>Plaintiffs,<br>v.<br><br>CHRISTOPHER F. ADOLF,<br>VILLAGE OF LAKEMOOR,<br>FRANCIS JOSEPH Y. REYES, and<br>SDR GARAGE INC.,<br><br>Defendants. | Case No. 1:24-cv-08430<br><br>Hon. Joan B. Gottschall,<br>District Judge<br><br>Hon. Jeffrey T. Gilbert,<br>Magistrate Judge |

**PLAINTIFFS' JOINT RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO STAY**

## INTRODUCTION

Defendants Reyes and SDR Garage Inc. ("SDR Defendants") seek to impose a draconian standard effectively silencing Impagliazzo. According to them, if Regan and Impagliazzo jointly sign court filings, that constitutes UPL; if Impagliazzo alone signs any document, apparently, that too constitutes UPL. This unusual logic is just one indication among many that the Motion's true purpose is not to address a good-faith ethical concern; rather, it contrives allegations of misconduct to burden and intimidate two self-represented litigants who have competently and lawfully pursued their own meritorious claims. This Court should deny the relief requested and reject the SDR Defendants' transparent effort to chill legitimate self-advocacy.

## ARGUMENT

### I. The Motion to Stay Is Fundamentally Flawed

#### A. The Motion Relies on a False Premise That Flouts This Court's Ruling on Impagliazzo's Article III Standing

Since this case's inception, the SDR Defendants have aggressively sought the removal of Impagliazzo. In support of their Rule 12(b)(1) motion, they maintained that "Plaintiffs' Complaint is properly viewed as an action for alleged violations of *Regan's* constitutional rights." (Dkt. No. 18 at 4.) After full briefing on the issue of standing, this Court ruled otherwise, stating that "Impagliazzo has adequately alleged his standing except as to the financial harm to Regan pleaded in Count V." *Regan v. Adolf*, No. 24-CV-8430, 2025 LX 397256, at *20 (N.D. Ill. Sep. 9, 2025). Dissatisfied with the law of this case, the SDR Defendants now seek to relitigate Impagliazzo's standing under the guise of an ethics inquiry. To that end, they string

cite a litany of purported litigation activities of Impagliazzo—"signing the instant [C]omplaint," "filing a motion . . . seeking the release of grand jury materials," "[s]ending a federal subpoena," "[s]ubmitting a Joint Initial Status Report," and "[s]ending a series of emails"—as if many instances of entirely proper conduct could somehow, in their cumulative effect, amount to even a single act of misconduct. (Dkt. No. 52 at 2-3.) Indeed, the instant Motion reveals its fundamental purpose by renewing the failed argument that this case is *actually* just Regan's because "only [] Regan was arrested and criminally prosecuted for writing a bad check." (Dkt. No. 52 at 2.) The argument assumes that Impagliazzo lacks Article III standing and thus, "based on th[at] backdrop," any action he takes *must* be on Regan's behalf rather than his own. *Id*. It adopts a faulty premise—one already rejected by this Court—and works backwards to mischaracterize proper, lawful conduct as criminal activity.

The Motion's chosen case law underscores its reliance on a false premise. It cites *Thigpen v. Banas*, which involved a complaint "ghostwrit[ten]" by a *nonparty* to the case. *Thigpen v. Banas*, No. 08 C 4820, 2010 U.S. Dist. LEXIS 11843, at *3 (N.D. Ill. Feb. 11, 2010). The Motion's other citations address nonlawyers operating litigation mills and holding themselves out as qualified to provide legal services. The SDR Defendants then venture 800 miles southwest to the Northern District of Texas to cite *Graham v. Dall. Indep. Sch. Dist.*, No. 3:04-CV-2461-B, 2006 U.S. Dist. LEXIS 13639, at *20 (N.D. Tex. Jan. 10, 2006). In *Graham,* a *lawyer* "turned his client's case over to a nonlawyer research firm and then lied about his actions to the Court." *Id*. at *1. He "fil[ed] frivolous pleadings" drafted by nonlawyers and thus

"abdicated his professional responsibility to his client." *Id.* at *22. *Graham* has no relevance to the propriety of *pro se* domestic partners collaborating on a lawsuit alleging violations of both of their legal rights. Despite canvassing case law beyond this Circuit, the SDR Defendants tellingly fail to marshal *any* persuasive support.

**B. The Motion Fails to Address Governing Law**

The Motion leaps from unsupported accusations to a prayer for relief, completely bypassing relevant legal standards save for one brief section ironically titled "The Unethical Practice of Law." (Dkt. No. 52 at 5.) "In any brief, to any court, attorneys have a duty to acknowledge and address the legal standard that governs the matter before it." *In re Witt*, 481 B.R. 468, 472 (Bankr. N.D. Ind. 2012). While the Motion invokes this Court's inherent authority to control its docket, invocation is no substitute for legal analysis. "[A] motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *United States v. Burr*, 25 F. Cas. 30; 1807 U.S. App. LEXIS 492). Yet, the SDR Defendants neither engage with the *Landis* factors nor cite Rule 26(c)—the principles governing their pathways for obtaining a stay. And although they seek leave to depose two parties to support their Motion, they do not mention the relevance and proportionality requirements of Rule 26(b)(1).[1] *See* Fed. R. Civ. P. 26(b)(1). The SDR Defendants identify no standard and establish no basis to obtain relief; belated attempts to

[1] Instead, the SDR Defendants dedicate two pages of their Motion to discussion of Plaintiffs' Fourteenth Amendment and IIED claims—merits issues having no bearing on whether this case should be stayed. (*See* Dkt. No. 52 at 4-5.) These irrelevant arguments nevertheless receive more detailed legal analysis than *Landis*, Rule 26(c), and Rule 26(b)(1) combined.

correct course in their reply should be disregarded. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.").

## II. The SDR Defendants Do Not Demonstrate Entitlement to Relief

### A. The SDR Defendants Are Not Entitled to a Stay

#### i. No Potentially Dispositive Threshold Issue Is Pending

A stay of discovery is typically appropriate only when a dispositive threshold issue is pending. *Scott v. Jeffreys*, No. 21 C 3334, 2021 U.S. Dist. LEXIS 258588, at *3 (N.D. Ill. Nov. 12, 2021). The Motion's naked allegations of UPL raise no such issue. Indeed, the SDR Defendants concede as much, requesting that this Court "set aside [the UPL] matter to ascertain what sanctions this Court would enter" after completion of the requested discovery. (Dkt. No. 52 at 6.) In other words, they admit that even if UPL were proven, litigation would resume. Because no dispositive issue is pending, the Motion fails at the threshold; analysis under *Landis* is unnecessary.

#### ii. The *Landis* Factors Weigh Heavily Against a Stay

Courts considering a stay assess whether it will: (1) prejudice the nonmoving party; (2) simplify the issues in the case; and (3) reduce the burden of litigation for the parties or the court. *Deato Huang v. Gelab Cosmetics LLC*, No. 22 C 2928, 2023 U.S. Dist. LEXIS 77066, at *5 (N.D. Ill. May 3, 2023). The movant bears the burden of establishing good cause for a stay. *Id*. On the current record, every relevant factor weighs against a stay. This case commenced over one year ago, and discovery has only recently proceeded in earnest. Conscious of the looming deadline to answer the

Complaint, the SDR Defendants now opt to further frustrate the "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. A stay would compound the delay and prejudice Plaintiffs by multiplying proceedings.[2] It would provide the SDR Defendants precisely the tactical advantage they seek by derailing discovery and subjecting Plaintiffs to interrogation on a collateral issue. Far from simplifying matters, the requested stay is tethered to an inquiry that would not resolve any claim or defense in this case, nor would it narrow or eliminate issues. When a stay "would not streamline the litigation and would only put off the requisite factfinding until a time when memories are less clear and evidence less fresh," this district's courts find such circumstances "weigh heavily against a stay." *ITEX, Inc. v. Mount Vernon Mills, Inc.*, No. 08 CV 1224, 2010 U.S. Dist. LEXIS 93987, at *6-8 (N.D. Ill. Sep. 9, 2010). Additionally, the movant "must make out a clear case of hardship or inequity . . . if there is even a fair possibility that the stay . . . will work damage to someone else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). A stay would create more than a "fair possibility" of damage to Plaintiffs; therefore, the SDR Defendants must establish "a clear case of hardship or inequity." *Id.* They fall far short of that burden—the only hardship identified is the hardship of litigation, which is no true hardship at all. While they may genuinely believe defending against a *pro se* suit to be inequitable, a stay is plainly unjustified on such grounds. (*See* Dkt. No. 52 at 5.)

[2] Although "delay alone does not necessarily constitute undue prejudice, a delay that is not merely lengthy but potentially indefinite is prejudicial to the nonmoving party." *Elikman v. Sirius XM Radio, Inc.*, No. 15 C 2093, 2015 U.S. Dist. LEXIS 171769, at *5 (N.D. Ill. Dec. 21, 2015) (quoting *Baxter Int'l, Inc. v. Fresenius Med. Care Holdings, Inc.*, No. 08 C 2389, 2008 U.S. Dist. LEXIS 76444, at *5 (N.D. Ill. Sep. 25, 2008)) (citation modified). Here, the SDR Defendants propose no definite length to the stay that they seek.

Finally, a stay would not lessen any burden on the parties or the Court. The SDR Defendants ask this Court to suspend their duty to defend against plausible claims while they don the ARDC's mantle, embarking on a baseless UPL expedition whose outcome has no bearing on any party's obligation to participate in this case.

**B. The SDR Defendants Are Not Entitled to Take UPL Depositions**

The SDR Defendants conclude their Motion by requesting leave to take two supplemental depositions "for the specific purpose of securing sworn testimony in support of this Motion." (Dkt. No. 52 at 6.) They would like the Court to reward unverified accusations of criminal conduct by deputizing them to investigate their opponents. Rule 26 forecloses their request: it limits discovery to matters "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). UPL allegations have no relevance to any party's claim or defense in this action alleging 42 U.S.C. § 1983 Fourth Amendment unlawful seizure, conspiracy, *Monell* liability, abuse of process, and IIED. Since the desired discovery is neither relevant nor proportional, the Motion ignores Rule 26 instead.

Rule 26(b)(1) also requires weighing "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. The proposed discovery would be burdensome and expensive while advancing no claim or defense in this litigation. Regan and Impagliazzo[3] would be required to submit to supplemental depositions

[3] Presumably, Regan and Impagliazzo are the targets of the "two one-hour depositions," but the Motion does not specify. (Dkt. No. 52 at 6.) This basic omission is emblematic of the Motion, and is independently fatal, since "the party seeking the additional depositions must specify who is to be deposed and the reasons why their testimony is necessary." *Szany v. Garcia*, No. 2:17-CV-74-JTM-PRC, 2018 U.S. Dist. LEXIS 202857, at *3 (N.D. Ind. Nov. 29, 2018) (quoting *S.F. Health Plan v. McKesson Corp.*, 264 F.R.D. 20, 21 (D. Mass. 2010))

on sensitive issues irrelevant to the merits of the case. Furthermore, even assuming *arguendo* the UPL alleged by the SDR Defendants—which Plaintiffs categorically deny—any hypothetical deposition benefit would be circumscribed by work product protections that render impermissible most inquiry into methods of collaboration, research, and litigation preparation. *See Ocean Beauty Seafoods LLC v. Captain Alaska*, No. C19-6173 BHS, 2022 U.S. Dist. LEXIS 196819, at *7 (W.D. Wash. Oct. 28, 2022) (stating that "a *pro se* litigant's own work product material, created in anticipation of litigation, may still be protected by the work product doctrine").

**C. The SDR Defendants Are Not Entitled to Sanctions**

To impose sanctions under its inherent authority, a court must find that a party acted willfully or in bad faith. *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016); *cf. Gregory v. Byrd*, No. 20-3204, 2023 U.S. App. LEXIS 3666, at *10 (7th Cir. Feb. 15, 2023) ("A court's inherent sanctioning powers should be employed sparingly and only when there is a record of delay, contumacious conduct, or when other, less drastic sanctions prove unavailing." (quoting *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003))). A district court's sanctions must also be "grounded in factual findings supported by the record." *Evans v. Griffin*, 932 F.3d 1043, 1047 (7th Cir. 2019). The Motion's depiction of UPL as a "serious threat . . . akin to fraud and deceit" imports the language of contumacious conduct into what amounts to lawful cooperation between two self-represented parties. (Dkt. No. 52 at 1.) Inflammatory rhetoric cannot substitute for a factual record. As illustration, the contrast with the Motion's chosen citation of *Chambers v. NASCO, Inc.* could not be

starker. There, the defendant perpetrated a multiyear pattern of fraud on the court by disobeying court orders, making frivolous motions, and attempting to deprive the court of jurisdiction via fraudulent conveyances. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 36-42 (1991). Here, the SDR Defendants seek to deploy this Court's most serious and discretionary powers to suppress routine coordination between properly joined self-represented parties. The SDR Defendants request precisely the sort of heavy-handed, indiscriminate use of inherent authority that *Chambers* proscribes.

## III. Plaintiffs' Prosecution of This Case Is Entirely Proper

### A. 28 U.S.C. § 1654 Grants a Federal Right to Self-Representation

The Motion inverts the law governing self-representation in federal court, stating that "Regan and Impagliazzo . . . are fully aware of their obligation to secure the services of a lawyer to practice law in federal court." (Dkt. No. 52 at 4.) Neither Regan nor Impagliazzo is aware of any such obligation, because none exists. To the contrary, federal law permits them to represent themselves. *See* 28 U.S.C. § 1654. Indeed, "there is no question that a party may represent his or her own interests in federal court without the aid of counsel." *Winkelman v. Parma City School District*, 550 U.S. 516, 522 (2007) (citing 28 U.S.C. § 1654). The assertion that Plaintiffs are required to obtain counsel contravenes their firmly established statutory right.

Section 1654's guarantee that parties may "conduct their own cases" includes third-party discovery, which Rule 45(a)(3) implements by mandating that the Clerk "issue a subpoena, signed but otherwise in blank, to a party who requests it." 28 U.S.C. § 1654; Fed. R. Civ. P. 45(a)(3). Yet, the Motion cites "a federal subpoena to

AT&T, with Notice of Subpoena signed by Impagliazzo only" as supposed evidence of UPL, and attaches it as Exhibit B. (Dkt. No. 52 at 3; *see* Dkt. No. 52-2 at 3.) This mischaracterization ignores that the subpoena itself bears the Clerk's signature, not Impagliazzo's, and was obtained through the procedure Rule 45 authorizes. (*See* Impagliazzo Decl. ¶ 27.) The Motion cites no authority—and there is none—for the proposition that obtaining a clerk-issued subpoena constitutes UPL. Its implication would bar *pro se* parties from employing court-authorized discovery devices and would eviscerate Section 1654's guarantee of the right to self-representation.

**B. Rules 11 and 20 Permit Joint Self-Represented Litigation**

The Motion complains that the "federal pleadings have been filed jointly by Plaintiffs," and "[n]one of the federal filings have been filed separately, whereupon a plaintiff drafts a document and certifies the same pursuant to Rule 11." (Dkt. No. 52 at 3.) Its grievances rest on a misunderstanding of federal procedure. Rule 20 allows plaintiffs to join in a single action if their claims "arise out of the same transaction, occurrence, or series of transactions or occurrences" and share a common question of law or fact. Fed. R. Civ. P. 20(a)(1). "[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties[,] and remedies is strongly encouraged." *Robinson v. Dart*, No. 13 C 1502, 2014 U.S. Dist. LEXIS 7696, at *6 (N.D. Ill. Jan. 21, 2014) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966)). Joiner is proper here: Plaintiffs' claims arise out of Defendants' tortious actions to collect a disputed repair bill.

Seventh Circuit precedent on the interaction of Rules 11 and 20 is clear: in a

joint action, "[Rule] 11 requires all unrepresented plaintiffs to sign a complaint, and the signature conveys all of the representations specified by Rule 11(b) for the entire complaint." *Boriboune v. Berge*, 391 F.3d 852, 855 (7th Cir. 2004). Rule 11 is silent regarding authorship of joint pleadings—instead, it requires certification that a filing serves a proper purpose and has legal and factual support. *See* Fed. R. Civ. P. 11(b). Regan and Impagliazzo sign every joint filing in accordance with Rule 11. (*See* Regan Decl. ¶ 7; Impagliazzo Decl. ¶ 4.) Conversely, UPL occurs when a nonattorney signs a joint filing on behalf of others. *See Davis v. Bank of America Corp.*, 727 F. App'x 880, 881 (7th Cir. 2018) (warning that a party "may not litigate in federal court on behalf of the other plaintiffs, none of whom signed her filings in this court"). The Motion brands as "UPL" Impagliazzo signing the Complaint, yet it omits that Regan also signed the Complaint. (Dkt. No. 52 at 1; *see* Dkt. No. 1 at 34.) Plaintiffs' joint signatures were not only proper—they were *required* by Rule 11.

## IV. Although the SDR Defendants' Motion Is Sanctionable on Multiple Grounds, Plaintiffs Prefer to Focus on This Case's Merits

### A. The Motion Lacks Any Legal Basis

"[E]very lawyer must do the necessary work to find the law before filing the brief. It is not acceptable to make an assertion of law and hope that it will turn out to be true." *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986). Here, counsel for the SDR Defendants makes numerous assertions of law that turn out to be "wildly untrue." *Id*. First, they reference an "obligation to secure the services of a lawyer to practice law in federal court," a proposition that directly contradicts, among other authorities, the Supreme Court's unanimous holding in *Winkelman*. (Dkt. No. 52 at

4.) "When counsel represent that something cleanly rejected by the Supreme Court is governing law, then it is appropriate to conclude that counsel are not engaged in trying to change the law; counsel either are trying to buffalo the court or have not done their homework." *Szabo Food Serv. v. Canteen Corp.*, 823 F.2d 1073, 1082 (7th Cir. 1987). Second, the Motion argues that a party sending a clerk-issued subpoena is evidence of UPL, despite Rule 45 permitting the practice. Third, the cases cited to support a claim of UPL are inapposite. The Motion's reliance on *United States v. Johnson*, 327 F.3d 554, 560 (7th Cir. 2003), misrepresents what *Johnson* holds and omits its controlling limits. *Johnson* involved a disbarred attorney's paralegal operation that undermined represented defendants' relationships with their counsel through unsupervised legal advice; the Seventh Circuit allowed only narrow, remedial measures and reversed punitive relief, emphasizing that inherent powers must be exercised with restraint and be narrowly tailored to proven abuse. Nothing in *Johnson* suggests collaborating on joint filings or cooperating with a co-plaintiff constitutes UPL. By invoking *Johnson* to justify a stay and UPL depositions based on speculation, counsel advances a legal contention not warranted by existing law.

**B. The Motion Lacks Any Factual Basis**

**i. The Motion Relies on Misrepresentations and Omissions**

The Motion confidently declares that "Regan has never spoken on his behalf, written an email, nor communicated on the telephone with a defense attorney." (Dkt. No. 52 at 4.) None of these representations are true. Regan "took part in the Rule 26(f) meeting" via teleconference and was present during all communications

with Mr. Brashler, prior counsel for the SDR Defendants.[4] (Regan Decl. ¶ 10.) Many emails relating to this case have been drafted jointly by Plaintiffs and contain "both of [their] names." (Impagliazzo Decl. ¶ 30.) Regan sent "multiple emails" directly to Mr. Brashler prior to Mr. Horwitz's appearance in this case on September 19, 2025. (Regan Decl. ¶ 11.) In the related Cook County case against the SDR Defendants, Regan "appeared on [his] own behalf" for all seven court hearings and played an "integral role" in an evidentiary hearing where he conducted the direct examination of Impagliazzo. (Regan Decl. ¶ 9; Impagliazzo Decl. ¶ 36.) In this case, discovery has only recently begun in earnest and there have not yet been any hearings to attend.

The omission of material facts is sanctionable under Rule 11. *See In re Ronco, Inc.*, 838 F.2d 212, 218 (7th Cir. 1988) (holding, in the context of Rule 11 sanctions, that the omission of highly relevant facts "amounts in its totality, to a half-truth that can be just as misleading, sometimes more misleading, than an absolutely false representation"). Here, the Motion describes Impagliazzo's signing of the Complaint as evidence that "Impagliazzo, alone, is prosecuting this cause." (Dkt. No. 52 at 4.) It omits that *both* Plaintiffs signed the Complaint, and that Regan signed his contemporaneous Appearance form by hand. (*See* Dkt. No. 1 at 34; Dkt. No. 3 at 1.) Regan's ink signature forecloses any suggestion that he failed to sign these filings

[4] One week after filing the Motion, the SDR Defendants moved to amend, admitting that Regan "participated in a . . . conversation with prior defense counsel . . . during a Rule 26(f) conference." (Dkt. No. 55 at 4.) The Motion to Amend attributes the error to the fact that "Movant, who is new to his case, has learned that [] Regan participated" in this conference. (*Id.*) That admission underscores that counsel leveled a serious UPL accusation—likening Plaintiffs' conduct to "fraud and deceit"—without conducting the reasonable prefiling inquiry that Rule 11(b) requires. (Dkt. No. 52 at 1.) Rule 11's standard is objective; being "new to the case" does not excuse categorical falsehoods. *See* Fed. R. Civ. P. 11(b).

or that they were actually executed by Impagliazzo. The Motion further asserts that Impagliazzo's request "for the parties' position" on a status report and submitting that report constitutes UPL, and attaches an allegedly improper email referencing that report. (Dkt. No. 52 at 3; *see* Dkt. No. 52-3 at 1.) The subsequent emails in the chain are absent, including one sent on Mr. Horwitz's behalf stating, "Thank you for preparing Louis. I've made no changes and added Blake's signature." (Ex. 1 at 6.) The omitted response signals acknowledgment and ratification of Impagliazzo's actions. By inviting Impagliazzo's draft, expressing gratitude for it, and adding a signature, Mr. Horwitz expressed no concern about Impagliazzo's contribution. The email chain in Exhibit C also fails to include the response of Eric Krumdick, counsel for the Village Defendants, who approved the report and addressed Plaintiffs by name. (*See* Ex. 1 at 2.) The selective truncation of the email chain—immediately before both of these emails—presents a materially misleading account to the Court.

Finally, the Motion presents as evidence of UPL circumstances that counsel for the SDR Defendants fostered himself. Mr. Horwitz placed an "unsolicited call" directly to Impagliazzo, which Impagliazzo predictably returned. (Impagliazzo Decl. ¶ 7.) Mr. Horwitz *never* attempted to contact Regan, despite having Regan's phone number and email address. (*See* Regan Decl. ¶ 9.) Had Mr. Horwitz contacted Regan directly, Regan "would have responded." (*Id.*) Mr. Horwitz is also aware that upon entering this case, his firm cancelled the supplemental Rule 26(f) conference, where he would have had the opportunity to discuss the case with Regan. (*See* Ex. 2 at 1.) Impagliazzo proposed rescheduling the Rule 26(f) conference to ensure direct

participation by all parties, but Mr. Horwitz declined, stating that "only two times in his career has a Rule 26 meeting been helpful." (Impagliazzo Decl. ¶ 12.) After declining opportunities for direct communication with Regan, counsel now cites an absence of contact as evidence of misconduct. Finally, the Motion depicts Impagliazzo's relay of a settlement demand as "[n]otabl[e]" evidence of UPL. (Dkt. No. 52 at 3.) Mr. Horwitz does not mention that he explicitly directed Impagliazzo to convey that written demand during their call. (*See* Impagliazzo Decl. ¶ 16.)

#### ii. The Motion Fails to Identify Unsupported Factual Contentions as Required by Rule 11(b)(3)

A signature on a filing certifies that its "factual contentions have evidentiary support or, if *specifically* so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3) (emphasis added). Without any identification, the Motion makes serious claims that have no evidentiary support. For example, the SDR Defendants do not possess evidence regarding Regan's contributions to filings, yet they state as fact that Impagliazzo drafted various documents. (*See* Dkt. No. 52 at 2-3.) Indeed, had the SDR Defendants possessed any evidence, they would have presented it rather than requesting discovery "in support of this Motion." (Dkt. No. 52 at 6.)

### C. The Motion Was Filed for an Improper Purpose

This Motion was not filed to discharge an "ethical obligation." (Dkt. No. 52 at 1.) The SDR Defendants waited thirteen months—until after discovery was issued and days before an answer to the Complaint is due—to raise these purported ethical concerns. The timing reveals the Motion's true purpose: to delay discovery, distract

from the merits, and deter Plaintiffs from zealously pursuing their claims. The pretextual nature of the Motion is evident in its professed concern that Regan's claims are not being "properly" prosecuted. (Dkt. No. 52 at 4.) Defendants have no legitimate interest that Plaintiffs correct purported "errors" in their case. (*Id.*) Their feigned altruism serves only to obscure the reality that this Motion was filed because Plaintiffs are prosecuting their claims not ineffectively, but *too* effectively.

The reputational harm to Impagliazzo from these accusations is grave. By placing charges of UPL—a crime in Illinois under 705 ILCS 205/1—in the public record, the SDR Defendants ensure that these baseless allegations will remain indefinitely. Prospective employers may discover the filing, unaware of its lack of merit. The stigma to Impagliazzo will survive the disposition of this Motion. More troubling still, the SDR Defendants have leveled these accusations without conducting a proper prefiling inquiry, as demonstrated by their Motion to Amend. (*See* Dkt. No. 55 at 1.)

## CONCLUSION

Based on inadequate inquiry, the SDR Defendants mischaracterize routine, lawful collaboration between properly joined, self-represented plaintiffs as criminal misconduct warranting an unprecedented case-wide stay. Their Motion misstates controlling law, relies on demonstrably false factual assertions, and disregards mandatory standards governing the relief sought. Plaintiffs respectfully request that this Court deny the Motion and allow this case to proceed without unwarranted delay.

Dated: October 17, 2025

Respectfully submitted,

/s/ *Louis Impagliazzo*
Louis Impagliazzo
1837 South Canalport Avenue
Chicago, Illinois 60616
+1 (415) 969-9993
impagliazzo@uchicago.edu

/s/ *Cameron Regan*
Cameron Regan
1837 South Canalport Avenue
Chicago, Illinois 60616
+1 (312) 975-5776
regan@windypixel.com