**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CAMERON REGAN and<br>LOUIS IMPAGLIAZZO,<br><br>Plaintiffs,<br>v.<br><br>CHRISTOPHER F. ADOLF,<br>VILLAGE OF LAKEMOOR,<br>FRANCIS JOSEPH Y. REYES, and<br>SDR GARAGE INC.,<br><br>Defendants. | Case No. 1:24-cv-08430<br><br>Hon. Joan B. Gottschall,<br>District Judge<br><br>Hon. Jeffrey T. Gilbert,<br>Magistrate Judge |

**DECLARATION OF LOUIS IMPAGLIAZZO**

I, Louis Impagliazzo, declare as follows:

1. I am a plaintiff in this action. I have personal knowledge of the facts contained in this Declaration and, if called to testify in this matter, I could competently testify to each of the facts set forth below.

**A. Background**

2. Cameron Regan ("Cameron") and I have lived together as domestic partners for twelve years. We have lived in Chicago for all twelve of those years, and have lived at our current address in East Pilsen, Chicago for five years.

3. This litigation began on September 13, 2024, when Cameron and I traveled to the Dirksen Federal Building to file our appearances and joint Complaint together.

4. The Complaint alleges violations of both of our legal rights. Both Cameron and I contributed to the creation of the Complaint based on our respective firsthand

knowledge of the events alleged and our individual claims arising from those events. We sign all joint filings pursuant to Federal Rule of Civil Procedure 11.

5. We chose to represent ourselves because we are confident in our ability to effectively present our claims and did not wish to unnecessarily consume scarce civil rights attorney resources on a case that we are capable of litigating independently.

6. Blake Wolfe Horwitz filed his appearance for the SDR Defendants in this case on September 19, 2025. Prior to Mr. Horwitz's appearance, Cameron and I had corresponded with the SDR Defendants' former counsel, Andrew Brashler, for twelve months without any apparent issue.

**B. The September 26, 2025 Telephone Call with Mr. Horwitz**

7. On September 25, 2025, Mr. Horwitz placed an unsolicited call to my mobile phone. I was not available at the time, so I returned his call the following morning.

8. Based on his firm's contemporaneous written request to postpone the Rule 26(f) meeting and two depositions in the Cook County litigation, my expectation was that the call would be related to my position on scheduling. A true and accurate copy of that email chain is attached to Plaintiffs' Response Brief as **Exhibit 2**.

9. The call lasted approximately sixteen minutes. It was the only time that I have ever spoken to Mr. Horwitz or any of his associates over the phone.

10. The call was primarily dedicated to introducing ourselves, discussing Rule 26 matters, and rescheduling depositions in the Cook County litigation. Mr. Horwitz also asked a few questions about my IIED claim.

11. Mr. Horwitz was very friendly during the call. He said that he was impressed

with the quality of the filings on the docket and gave an unsolicited compliment of my intelligence in strongly worded language.

12. I requested Mr. Horwitz's availability to attend a supplemental Rule 26(f) planning meeting, since he had just replaced Mr. Brashler as counsel for the SDR Defendants. Mr. Horwitz responded that it was not necessary and that "only two times in his career has a Rule 26 meeting been helpful."

13. I volunteered to create an initial template of the Rule 26(f) report for all other parties to revise and sign. Mr. Horwitz responded to my offer by expressing his gratitude. He never mentioned unauthorized practice of law or any ethics concerns.

14. At no point during the call did Mr. Horwitz ask about Cameron's availability or whereabouts. At no point did I make any statements on Cameron's behalf. At no point did I identify myself as Cameron's representative in any capacity.

15. To the contrary, Mr. Horwitz verbally acknowledged his understanding that Cameron and I are both litigating this case "*pro se*."

16. Mr. Horwitz ended the call by specifically instructing me to "send him the details" of the proposed settlement demand that Cameron and I had agreed upon.

**C. Written Communications and Rule 26(f) Report**

17. I followed Mr. Horwitz's instruction and emailed him the settlement demand.

18. My understanding is that I was relaying a message regarding an offer that Cameron and I had already jointly agreed to send. The alternative—Cameron and I sending identical emails repeating the terms of a settlement that we each had considered and approved—seemed unnecessary. Cameron was copied on the email.

19. During calls with the SDR Defendants' prior attorney, Mr. Brashler, Cameron was always present on speakerphone during calls relating to joint issues.

20. As a party to this case, my understanding is that it is completely proper for me to speak with counsel for the SDR Defendants.

21. On September 29, 2025, I emailed a draft of the Rule 26(f) report to all parties. A true and accurate copy of that complete email chain is attached to Plaintiffs' Response Brief as **Exhibit 1**.

22. Mr. Horwitz did not respond to that email raising any ethics concerns.

23. Mr. Horwitz's associate, Sergio Moreno, responded by approving the report, adding Mr. Horwitz's signature to the report, and *thanking me* for preparing the report.

**D. Intervention in the McHenry County Criminal Case**

24. On October 8, 2025, I filed an appearance as an interested party in Cameron's criminal case because I wished to obtain evidence for my case. Cameron and I jointly moved to unseal the grand jury minutes from his criminal case.

25. My understanding is that the grand jury minutes are relevant to both of our claims, since Cameron has a pending Fourth Amendment malicious prosecution claim, and I have a civil conspiracy claim alleging that Cameron's wrongful prosecution was part of the illegal means of the conspiracy directed against me.

26. Cameron and I revised, approved, and signed the motion filed in that matter.

**E. The AT&T Subpoena Duces Tecum**

27. On October 3, 2025, I drafted a Rule 45 subpoena and gave proper notice to

all parties prior to service. The subpoena was signed by the Clerk of Court.

28. The subpoena seeks call metadata that I believe is relevant to my conspiracy claim. Mr. Brashler had expressly told me to subpoena the records because his client was unable to retrieve them through his phone carrier's portal.

29. My understanding is that, as a party to this litigation, it is completely proper for me to request documents that are relevant to my claims.

**F. The Nature of Plaintiffs' Working Collaboration**

30. Whenever Cameron or I send an email containing both of our names in the signature block, that means that Cameron and I have reviewed the email, reached a joint agreement on the wording of the email, and agreed to send the email. During this case's pendency, we have sent many such jointly drafted emails.

31. I do not make any decisions on Cameron's behalf.

32. Cameron and I generally spend anywhere from three to fifteen hours per week discussing legal and factual matters related to this case, depending on case activity.

33. Cameron and I normally spend two to three nights per week reviewing evidence and other case documents at the kitchen table in our shared home.

34. Although I am more knowledgeable about law, Cameron materially contributes to this case and the Cook County litigation and has full control over all aspects of his claims, including strategy and any choice of legal arguments.

35. Cameron and I have made seven appearances in the Cook County litigation against the SDR Defendants. Cameron has appeared on his own behalf for all of

those hearings.

36. One of those hearings was a two-hour evidentiary hearing on a motion to transfer venue to McHenry County, precipitated by Defendant Reyes's filing of a false affidavit to bolster his motion. In his affidavit, he claimed that he did not know of my existence until three months into performance of the contract between us.

37. During that hearing, Cameron played an integral role. He fully participated on his own behalf by questioning me on direct examination.

38. I am not, nor have I ever been, a lawyer—I studied mathematics at the University of Chicago. I am representing myself in this case by pursuing evidence and making arguments in support of my own claims.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: October 17, 2025

/s/ *Louis Impagliazzo*

Louis Impagliazzo
1837 South Canalport Avenue
Chicago, Illinois 60616
+1 (415) 969-9993
impagliazzo@uchicago.edu