**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LOUIS IMPAGLIAZZO and CAMERON REGAN, | ) | |
| Plaintiffs, | ) | Case No.: 1:24-cv-08430 |
| v. | ) | Hon. Judge Joan B. Gottschall<br>Magistrate Judge Jeffrey T. Gilbert |
| SDR GARAGE INC., *et. al.* | ) | |
| Defendants. | ) | |

**RULE 12(b)(6) MOTION TO DISMISS**

NOW COME the Defendants, SDR GARAGE INC. and FRANCIS JOSEPH Y. REYES, and hereby submit the following Federal Rule of Civil Procedure 12(b)(6) motion. Movants state the following in support:

**Introduction**

For purposes of deciding the pending Rule 12(b)(1) and 12(b)(6) motions, the Court accepts the complaint's well-pleaded facts as true and draws all reasonable inferences from those facts in Plaintiffs' favor. *Impagliazzo et al v. SDR Garage, et al*, Dkt No. 41, p. 2 (Gottschall, J) (2025). So as to avoid duplicity, Movant adopts the facts as set forth by the Court's most recent opinion. *Id.*

**I. This Court Should Dismiss Plaintiffs' Abuse of Process Claim, Count V.**

The tort of Abuse of Process and Malicious Prosecution are distinct torts with separate elements. *Reed v. Dr.'s Assocs., Inc.*, 355 Ill. App. 3d 865 (5th Dist. 2005). One does not fit the other. In Illinois, the tort of abuse of process is not favored and its elements are strictly construed against a plaintiff. *Henson v. Espejo*, No. 3:25-cv-03192-JEH-RLH, 2025 LX 477800, at *7

(C.D. Ill. Sep. 19, 2025).[1] "[T]he tort of abuse of process is a very narrow tort," *Commerce Bank v. Plotkin*, 255 Ill. App. 3d 870, 872 (3d Dist. 1994), and *only* applies where there is an abuse of the actual *litigation process* – not an abusive reason for initiating that process. In the instant case, Plaintiffs have *only* alleged that there was an abusive reason for the criminal prosecution. No matter how it is couched, an abusive *reason* does not fly for this limited, narrowly construed, and disfavored tort. For Plaintiffs to get past a Rule 12(b)6 motion, they would have to allege, in accordance with Rule 11, that the process Plaintiff Regan faced in the criminal action was "used to accomplish some result which is beyond the purview of the process or which compels the party against whom it is used to do some collateral thing which he could not legally be compelled to do." *Doyle v. Shlensky*, 120 Ill. App. 3d 807, 816 (1st Dist. 1983). For example, if Plaintiff were being extorted—through the criminal process—to give Defendant Reyes a separate vehicle or engage in a drug transaction, these acts would fall outside the process of the criminal case and support an abuse of process claim. However, all Plaintiffs have alleged is that Reyes (1) had a malignant reason to initiate the criminal prosecution of Regan, (2) induced a police officer and Assistant State's Attorney to continue with that process, (3) caused Regan to pay the complaining witness a check that was the subject matter of the criminal cause, (4) that the check should not have been paid as it was for a fraudulent repair of a vehicle, (5) and that the criminal case was dismissed after tendering the check to the Reyes (the complaining witness). Taking Plaintiffs' complaint as true, this story provides an undesirable reason for the initiation of the criminal process, but it does not give rise to an abuse of process because the *process* was within the bounds of a traditional criminal cause. As frequently happens in abuse of process cases, a

[1] *Also see, Erlich v. Lopin-Erlich*, 195 Ill. App. 3d 537, 539 (1st Dist. 1990) (disfavored action); *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 339 Ill. App. 3d 177, 183 (2nd Dist. 2003) (same).

plaintiff attempts to reformulate what is actually a malicious prosecution claim to fit it into an abuse of process claim. This attempt fails here.

In the normal process of criminal cases, thousands are dismissed in the *quid pro quo* context. This case is no different. A debt was owed, and Plaintiff Regan paid it. Nothing can escape the fact that criminal defendant Regan chose not to fight the criminal case and instead chose to resolve it for a *nolle prosequi* after making a payment to the complaining witness.

When the *process* is used only for its intended purpose, there can be no cause of action for abuse of process, even if the existence of an ulterior purpose or motive is shown. *Holiday Magic, Inc. v. Scott*, 4 Ill. App. 3d 962 (1st Dist. 1972). A typical example of abuse of process exists with extortion—using the process to put pressure on someone to compel the payment of a debt that is *different* than the subject matter of the litigation before the court. *Community National Bank v. McCrery*, 156 Ill. App. 3d 580, 5834 (3rd Dist. 1987).

*Johnson v. FirstKeyHomes LLC*, No. 23 C 5165, 2025 LX 160502, at *10-11 (N.D. Ill. Jan. 30, 2025), provides some instruction. In this civil case, the plaintiff alleged that the defendant had a racial motive to evict, and the court found that the tort of abuse of process could not stand as "the process [was] used only for its intended purpose," "even if the existence of an ulterior purpose or motive is shown."[2] The court furthered that the *Johnson* plaintiff failed to plead any facts that the eviction action was used to accomplish a "result that is beyond the purview of the [eviction process]". *Id.*; *see also Bozek v. Bank of Am., N.A.*, 2021 IL App (1st) 191978.

In the instant case, Plaintiff was compelled to be a criminal defendant, as are all criminal defendants. At the end of the criminal case, Regan chose to pay the complaining witness for a

---

[2] *Citing Community Nat'l Bank in Monmouth v. McCrery*, 156 Ill. App. 3d 580 (3d Dist. 1987).

bad check he allegedly wrote so that Regan would not have to face a criminal trial.[3] The object of the criminal case was for Regan to be criminally prosecuted for writing a bad check. The case was resolved in the natural order of that process. The abuse of process claim must be dismissed, with prejudice because the second element cannot be met.[4]

**II. This Court Should Dismiss Plaintiffs' IIED Claim, Count VI**

To state an intentional infliction of emotional distress (IIED) claim under Illinois law, a Plaintiff must allege that the conduct in question was truly extreme and outrageous; that the actor intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would have caused such distress; and that the conduct in fact caused severe emotional distress. *Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024); *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041. Liability for this tort exists *only* when the alleged conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*; *see also McGrath v. Fahey*, 126 Ill. 2d 78 (1988). It is the latter interpretation of the IIED elements that is the subject of the instant Motion.

Plaintiffs allege that Movant Reyes, by complaining to the police and/or Assistant State's Attorney and verbally threatening Plaintiffs with criminal prosecution, have made out a case for IIED, where the State's Attorney and police officer fully analyzed the case, chose to prosecute only Regan and ultimately the case was resolved where Plaintiff Regan paid Defendant Reyes to

---

[3] The Court notes, in its order (Dkt No. 41, p. 4) that Plaintiffs alleged that Regan "issued a cashier's check for $10,322.24 to SDR Garage [and t]he next morning, a *nolle prosequi* was entered.

[4] *See Erlich*, 195 Ill. App. 3d at 539 (no abuse of process claim where the plaintiff alleged that the defendant obtained a TRO on false pretenses with the subjective intention of causing the plaintiff financial harm but did so in the regular prosecution of the proceeding); *cf. Weifang Tengyi Jewelry Trading Co. v. Intuii LLC*, No. 18 C 4651, 2019 U.S. Dist. LEXIS 140160, 2019 WL 3889626, at *4-5 (N.D. Ill. Aug. 19, 2019).

make good on the bad check as an inducement to resolve the criminal case. Notably, only Reyes was criminally prosecuted, not Impagliazzo.

Similar to the analysis for the Abuse of Process tort, the criminal action demonstrates a relatively normal process in today's society. Said differently, every day individuals are criminally prosecuted and defended and must go through a legal process. All of these individuals who go through this process experience the natural (though very distasteful and stressful) procedure of due process guaranteed by our Constitution, which is otherwise known as *having to defend a case*. Criminal Defendant Regan, now Plaintiff, paid the complaining witness all that was due and got off the hook. This set of facts is not so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024) (emphasis added); *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041; *McGrath*, 126 Ill. 2d at 78. The instant case demonstrates the opposite. Civilized society provides for a constitutionally protected due process. Regan was given due process. Impagliazzo was not prosecuted at any time. This criminal case was not utterly intolerable to a civilized society, but a part of that which makes our society civilized. To be clear, Regan was not found guilty at trial based on bogus evidence and spent no time in prison. Regan resolved the criminal case by paying the debt he was alleged to have owed. To allow this case to go forward opens the floodgates and undermines malicious prosecution actions because an IIED claim does not require the absence of probable cause and would not otherwise survive in the absence of a favorable termination where a *quid pro quo* takes place to induce a *nolle,* as alleged *sub judice*.[5]

---

[5] The abandonment of the proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial. *Swick v. Liautaud*, 169 Ill. 2d 504, 512-13 (1996); (Restatement (Second) of Torts §§ 660, 661 (1977). Thus a *nolle* does not allow for a malicious prosecution claim to proceed where it was entered as a *quid pro*

Notably, Plaintiff Regan has not filed a malicious prosecution claim, which is what he is really after, as said claim cannot be brought given that he negotiated the dismissal of his case. Instead, like many plaintiffs, Plaintiffs here are simply attempting to fit a round peg in a square hole. *See, e.g., Hill*, 2020 U.S. Dist. LEXIS 17354, 2020 WL 509031, at *3 (finding that, because the plaintiffs' wrongful convictions were the crux of their IIED claims, those claims could not be brought until the convictions were overturned); *Andersen*, 2019 U.S. Dist. LEXIS 205478, 2019 WL 6327226, at *6 (finding that the plaintiff's IIED claim directly attacked his conviction and therefore did not accrue until his conviction was overturned).

As alleged by Plaintiffs, they experienced stress and emotion, but similar to the Fourteenth Amendment claim that requires more than a bond hearing detention (*see infra)*, an IIED claim also requires more. The defendant's conduct must be so outrageous in character, so extreme in degree, that it goes beyond <u>all possible bounds of decency</u>, and to be regarded as atrocious, and <u>utterly intolerable in a civilized community</u>. However, the complaint alleges that Reyes tendered his complaint to the police and the state's attorney, and a stressful—even very stressful—process unfolded. But Regan paid his debt. This is not a case where complaining witness Reyes physically attacked either Plaintiff. It is neither extreme nor outrageous nor beyond all possible bounds of decency in a civilized society to use the constitutionally protected court system to seek justice. This particular claim should fail. Revealingly, a malicious prosecution claim has not been lodged.

---

*quo* to prevent trial and pursuant to an agreement to pay the complaining witness relative to an outstanding debt that is the subject matter of the criminal cause. *Swick, Id.*

**III. The Fourteenth Amendment Due Process Claim, Count III, Fails.**

Count III is defective by not explaining how Defendant Reyes committed a violation under the Fourteenth Amendment. In other words, the Fourteenth Amendment claim is devoid of a core element. For that reason, this count should be dismissed.

To sustain a due process claim based on fabricated evidence, a plaintiff must have been deprived of his liberty as liberty is interpreted by the courts. In the context of this count, the Seventh Circuit and its progeny have made abundantly clear that a plaintiff who was released "on bond" following his arrest and otherwise acquitted at trial "cannot make out an evidence fabrication-based due process violation." *Saunders-El v. Rohde*, 778 F.3d 556, 558 (7th Cir. 2015).

In the instant case, all that has been alleged is that Regan was released on bond and that the criminal case was dismissed pursuant to a *quid pro quo,* as set forth *supra.* Being released on bond does not amount to a Fourteenth Amendment liberty deprivation, and therefore, said count must be dismissed with prejudice.[6] If a plaintiff was not released on bond, however, his pretrial detention may satisfy this requirement even if he is ultimately acquitted. *See Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000) ("The liberty deprivation is the eight months he was confined, from his bail revocation (after his arrest) to his acquittal, and the due process violation is the manufacture of false evidence."); *Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012) (same).

---

[6] *Alexander v. McKinney*, 692 F.3d 553 (7th Cir. 2012) (as plaintiff was released on bond and acquitted, he had not 14th Amendment deprivation of liberty claim); *accord Lattimore v. Klein*, No. 17-CV-8683, 2019 U.S. Dist. LEXIS 33436, at *13 (N.D. Ill. Mar. 4, 2019); *Holmes v. Curran*, No. 17 C 3031, 2018 U.S. Dist. LEXIS 98200, at *3 (N.D. Ill. June 12, 2018) (even when the prosecution uses fabricated evidence at trial, the defendant's due process claim is wiped away if he is released on bond and then acquitted); *Shannon v. Donnelly*, No. 24-cv-12078, 2025 LX 365176, at *20 (N.D. Ill. July 31, 2025) (same); *Smith v. City of Chicago*, No. 18 CV 4918, 2019 U.S. Dist. LEXIS 601, 2019 WL 95164, at *4 (N.D. Ill. Jan. 3, 2019) (same).

In essence, this count suffers from the same infirmity as the Abuse of Process allegation. Plaintiffs allege reprehensible conduct and seek to squeeze it into a tort that does not apply. The Court in *Saunders-El v. Rohde*, 778 F.3d 556, 558 (7th Cir. 2015), was faced with the same dilemma when seeking to resolve *Brady* allegations via a Fourteenth Amendment due process claim. There, the court found that a criminal defendant's due process rights may be violated and actionable by way of 42 U.S.C. § 1983 if the evidence against him is fabricated. But due process is not implicated when the defendant is released on bond following his arrest and acquitted at trial. The Court emphasized that "this rule cannot be circumvented." *Id.* Even in the face of "a *Brady* claim." *Id.* As a *Brady* claim alleges bad conduct by the purported tortfeasors prior to the detention, said detention cannot give rise to a due process claim where the Plaintiff was released on bond. *Also see* FN 4.

The Fourteenth Amendment Claim in Count III should be dismissed with prejudice.

**IV. Separate Counts**

Defendants also ask that Count III set forth separate counts based on Rule 10(b) of the Federal Rules of Civil Procedure. If this Court allows the Fourteenth Amendment claim to stand, that claim is different from the false arrest claim, and Plaintiffs should separately plead this claim to allow for clarity in the litigation. Rule 10(b) states, in pertinent part, "Each claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth." Fed. R. Civ. P. 10(b); *see also Sajour v. First Nat'l Bank,* 1987 WL 28403, at *5 (N.D. Ill. Dec. 21, 1987).

For this reason, Movants pray that this Court order that the false arrest and Fourteenth Amendment claim be set forth in a separate count.

WHEREFORE, Movants pray that this Court grant the instant Motion and for any and all other further relief deemed met and just.

Respectfully submitted,

***/s/Blake Horwitz***
Attorney for Defendants SDR Garage, Inc.
& Francis Reyes

**The Blake Horwitz Law Firm, Ltd.**
Blake Horwitz, Esq.
216 S. Jefferson Street, Suite 101
Chicago, IL 60661
Phone: (312) 676-2100
Fax: (312) 445-8741

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LOUIS IMPAGLIAZZO and<br>CAMERON REGAN, | ) | |
| | ) | Case No.: 1:24-cv-08430 |
| Plaintiffs, | ) | |
| | ) | Hon. Judge Joan B. Gottschall |
| v. | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| SDR GARAGE INC., *et. al.* | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2025, I served the above and foregoing **Defendants' Motion to Dismiss** on all Parties on record using the ECF filing system.

Respectfully submitted,

***/s/Blake Horwitz***
Attorney for Defendants SDR Garage, Inc.
& Francis Reyes

**The Blake Horwitz Law Firm, Ltd.**
Blake Horwitz, Esq.
216 S. Jefferson Street, Suite 101
Chicago, IL 60661
Phone: (312) 676-2100
Fax: (312) 445-8741
bhorwitz@bhlfattorneys.com