**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CAMERON REGAN and<br>LOUIS IMPAGLIAZZO,<br><br>Plaintiffs,<br>v.<br><br>CHRISTOPHER F. ADOLF,<br>VILLAGE OF LAKEMOOR,<br>FRANCIS JOSEPH Y. REYES, and<br>SDR GARAGE INC.,<br><br>Defendants. | Case No. 1:24-cv-08430<br><br>Hon. Joan B. Gottschall,<br>District Judge<br><br>Hon. Jeffrey T. Gilbert,<br>Magistrate Judge |

**PLAINTIFFS' JOINT RESPONSE BRIEF IN OPPOSITION TO SDR DEFENDANTS' SECOND MOTION TO DISMISS**

## INTRODUCTION

SDR Defendants' second Rule 12(b)(6) Motion begins by declaring that, "to avoid duplicity," it "adopts the facts as set forth by the Court's most recent opinion." (Mot. Dismiss II at 1, Dkt. No. 66.) While purporting to "accept" the Complaint's facts, the Motion pointedly rejects this Court's legal findings. (*Id.*) Without identifying any new facts or intervening law, SDR Defendants obliquely ask this Court to reconsider its ruling that the Complaint alleges plausible claims of conspiracy, abuse of process, and IIED. (*See* Mem. Op. and Order, Dkt. No. 41.) Filed as a successive Rule 12(b)(6) motion in violation of Rule 12(g)(2), SDR Defendants' second Motion to Dismiss serves only to secure yet another postponement of their obligation to answer the Complaint. Plaintiffs respectfully request that this Court deny the Motion.

## ARGUMENT

### I. SDR Defendants' Rule 12(b)(6) Motion Is Procedurally Improper

#### A. Rule 12(g)(2) Prohibits Successive Pre-Answer Rule 12 Motions

Rule 12(g)(2) disallows successive Rule 12 motions based on defenses "that [were] available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2); *see also Regan v. Adolf*, No. 24-CV-8430, 2025 LX 397256, at *11 (N.D. Ill. Sep. 9, 2025) (Gottschall, J.) ("Rule 12(g)(2) limits the manner and timing in which a litigant may raise the defense of failure to state a claim."). "This required consolidation of defenses and objections in a Rule 12 motion is salutary in that it works against piecemeal consideration of a case." Fed. R. Civ. P. 12(g) advisory committee's note to 1966 amendment. While Rule 12(h)(1) causes waiver of certain defenses omitted from

a Rule 12 motion, Rule 12(h)(2) expressly preserves the defense of failure to state a claim, which may be raised: "in any pleading allowed or ordered under Rule 7(a)," "by a motion under Rule 12(c)" for judgment on the pleadings, or "at trial." Fed. R. Civ. P. 12(h)(2). Based on the legal maxim of *expressio unius est exclusio alterius*, Rule 12(h)(2)'s enumeration excludes other methods, such as a Rule 12(b)(6) motion.

### B. *Ennenga* Should Be Limited to Its Procedural Posture

In *Ennenga v. Starns*, a two-judge panel placed the Seventh Circuit into a two-circuit minority by interpreting Rule 12(g)(2) to allow serial Rule 12(b)(6) motions.[1] 677 F.3d 766, 773 (7th Cir. 2012). Critically, however, *Ennenga* involved a successive Rule 12(b)(6) motion filed in response to a newly amended complaint. This Court has applied *Ennenga* to allow a successive Rule 12(b)(6) motion that similarly addressed an amended complaint. *See Marit, LLC v. Bokor*, No. 23-CV-15912, 2025 LX 402190, at *6 (N.D. Ill. Sep. 29, 2025) (Gottschall, J.). While *Marit* did not expressly circumscribe *Ennenga*'s application, it had no occasion to, since the procedural posture of *Marit* mirrored *Ennenga* itself. By contrast, SDR Defendants' first and second Rule 12(b)(6) Motions both address the same unamended Complaint. The present Motion recycles arguments this Court has rejected and raises defenses that could have been asserted by SDR Defendants' first Rule 12(b)(6) Motion. (*See* Dkt. Nos. 17, 18.) Faced

---

[1] This reading of Rule 12 had previously been espoused solely by the Fifth Circuit, which only half-heartedly continues to defend it. *See Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007); *see also Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 686 (5th Cir. 2017) (conceding the possibility that "Rule 12(h)(2) should not be interpreted this way"). The minority interpretation of Rule 12 has drawn sharp criticism. *See Pepper v. Apple Inc. (In re Apple iPhone Antitrust Litig.)*, 846 F.3d 313, 318 (9th Cir. 2017) ("The Seventh Circuit misunderstands Rule 12, reading Rule 12(h)(1) to provide the only sanction for failure to raise a Rule 12 defense in a prior motion under the Rule.").

with similar facts, some courts in this district have distinguished *Ennenga*, declining to entertain a successive Rule 12(b)(6) motion. *See, e.g.*, *Williams v. State Farm Mut. Auto. Ins.* Co., No. 22 C 1422, 2023 LX 77238, at *8-9 (N.D. Ill. Dec. 21, 2023) (Kendall, J.) (denying a Rule 12(b)(6) motion on procedural grounds where, "[u]nlike in *Ennenga*, [the p]laintiffs did not amend their complaint after the [c]ourt denied [the defendant's] previous Rule 12(b)(6) motion"); *Kramer v. Am. Bank & Tr. Co., N.A.*, No. 11 C 8758, 2014 U.S. Dist. LEXIS 99718, at *6-7 (N.D. Ill. July 23, 2014) (Lee, J.) (finding *Ennenga* to be "inapposite" where a party "waited to raise the failure-to-state-a-claim defense [via Rule 12(b)(6) motion] until after she had raised" another Rule 12 motion targeting the complaint); *Plumtree v. City of Naperville*, No. 22 C 6635, 2024 U.S. Dist. LEXIS 112493, at *8 (N.D. Ill. June 26, 2024) (Pallmeyer, J.) (noting that "[u]nlike the situation in *Ennenga*, [the d]efendants' [Rule 12(b)(6)] motion more closely resemble[d] the kind of piecemeal litigation Rule 12(g) is meant to prevent"). *Ennenga* recognizes that "the policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground." *Ennenga*, 677 F.3d at 773. That is precisely what SDR Defendants attempt here. Under similar circumstances, this Court has held that "serial Rule 12(b)(6) motions to dismiss are prohibited." *Dyson, Inc. v. Euro-Pro Operating LLC*, No. 14 C 9442, 2015 U.S. Dist. LEXIS 198967, at *3-4 (N.D. Ill. May 4, 2015) (Gottschall, J.). Applying this Court's reasoning in *Dyson* would give effect to *Ennenga*'s stated policy rationale, preventing parties from abusing Rule 12(h)(2) by parceling failure-to-state-a-claim defenses into a procession of Rule 12(b)(6) motions.

### C. The Motion Rehashes Arguments That This Court Has Already Rejected

<table>
<tr><th>SDR Defendants’<br>First Rule 12(b)(6) Motion<br>(Mot. Dismiss I, Dkt. No. 18)</th><th>SDR Defendants’<br>Second Rule 12(b)(6) Motion<br>(Mot. Dismiss II, Dkt. No. 66)</th><th>Memorandum Opinion on SDR Defendants’ First Rule 12(b)(6) Motion (Dkt. No. 41)</th></tr>
<tr><td>“When the process is used only for its intended purpose, there can be no cause of action for abuse of process.” (Mot. Dismiss I at 7.)</td><td>“When the process is used only for its intended purpose, there can be no cause of action for abuse of process.” (Mot. Dismiss II at 3.)</td><td rowspan="3">“The present complaint adequately alleges institution of process for an improper purpose when plaintiffs plead, repeatedly and plausibly, that Reyes reported Regan’s bounced check to Lakemoor police to obtain leverage in a bona fide dispute over a repair bill. … Again, Reyes’s motive and intent may be alleged generally at the pleading stage. The Complaint states a plausible abuse of process claim.” Regan, 2025 LX 397256, at *30-31.</td></tr>
<tr><td>“Plaintiffs fail to establish any ulterior motive or purpose beyond reporting a crime and desiring restitution … . Reyes’s sole motive in calling the police was identical to that of any victim of a similar offense.” (Mot. Dismiss I at 7.)</td><td>“In the instant case, Plaintiff was compelled to be a criminal defendant, as are all criminal defendants. … The object of the criminal case was for Regan to be criminally prosecuted for writing a bad check.” (Mot. Dismiss II at 3-4.)</td></tr>
<tr><td>“The process of the court … was used for its intended purpose.” (Mot. Dismiss I at 7.)</td><td>“[T]he process was within the bounds of a traditional criminal cause.” (Mot. Dismiss II at 2.)</td></tr>
<tr><td>“There is no legal authority to support the contention that Reyes … committed extreme and outrageous conduct by … report[ing] a bounced check.” (Mot. Dismiss I at 8.)</td><td>“It is neither extreme nor outrageous … in a civilized society to use the constitutionally protected court system to seek justice.” (Mot. Dismiss II at 6.)</td><td rowspan="2">“By failing adequately to develop an argument for dismissing [P]laintiffs’ IIED claim, moving [D]efendants have forfeited this issue under the rule that perfunctory, underdeveloped, and cursory arguments are waived … . Count VI will not be dismissed.” Regan, 2025 LX 397256, at *33.</td></tr>
<tr><td>“Plaintiffs’ IIED claim fails because they did not in fact suffer severe emotional distress.” (Mot. Dismiss I at 9.)</td><td>“As alleged by Plaintiffs, they experienced stress and emotion … an IIED claim requires more.” (Mot. Dismiss II at 6.)</td></tr>
</table>

The table demonstrates the Motion's reassertion of arguments that this Court has already either rejected or deemed forfeited. Allowing renewal of those arguments would reward the very underdevelopment that forfeiture doctrine is meant to deter. Moreover, "[u]nder the law of the case doctrine, a court generally should not reopen issues decided in earlier stages of the same litigation." *Maurice Sporting Goods, Inc. v. BB Holdings, Inc.*, No. 15-CV-11652, 2017 U.S. Dist. LEXIS 96092, at *9 (N.D. Ill. June 22, 2017) (St. Eve, J.). "[T]he law of the case … authorizes such reconsideration if there is a compelling reason—such as a change in or clarification of law—that makes clear that the earlier ruling was erroneous." *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 873 (N.D. Ill. 2017) (quoting *Santamarina v. Sears*, 466 F.3d 570, 571-72 (7th Cir. 2006)) (citation modified). The Motion does not provide any reason—much less a compelling reason—to revisit this Court's ruling. And even setting aside proper procedure and the law of this case, the Motion's arguments fail on the merits.

## II. Count V States a Plausible Claim of Abuse of Process

### A. The Complaint Pleads a Paradigmatic Case of Abuse of Process

Using criminal process to coerce the payment of debt is a prototypical example of abuse of process. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 121 (5th ed. 1984) ("[I]f the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution; if he prosecutes him with such grounds to extort payment of a debt, it is abuse of process."); *see also* Restatement (Third) of Torts: Liability for Economic Harm § 26 (A.L.I. 2020) ("An actor is subject to liability for the abuse of judicially issued process to achieve an

objective that is outside the purpose for which the process is intended."). The "purpose of a criminal court is not to provide a forum for the ascertainment of private rights. Rather[,] it is to vindicate the public interest in the enforcement of the criminal law." *Standefer v. United States*, 447 U.S. 10, 25 (1980). Here, Reyes had no legitimate law-enforcement interest—as documented by Officer Adolf's report, Reyes admitted that he "just wanted the money." (Compl. ¶ 49.) Indeed, "Reyes reported Regan's bounced check to Lakemoor police to obtain leverage in a bona fide dispute over a repair bill." *Regan*, 2025 LX 397256, at *31. Such conduct is precisely what courts in this district have long condemned: "[t]he most common form of such abuse is by working upon the fears of a person after having him arrested, for the purpose of extorting money, or other property, or of compelling him to sign some paper, to give up some claim, to pay a debt or to do some other like act … ." *Alberto-Culver Co. v. Andrea Dumon*, 295 F. Supp. 1155, 1160 (N.D. Ill. 1969) (quoting *Ruehl Bros. Brewing Co. v. Atlas Brewing Co.*, 187 Ill. App. 392, 397 (1914)); *see also Exec. Commercial Servs. v. Daskalakis*, 74 Ill. App. 3d 760, 767 (1979) ("An action for abuse of process lies where a creditor harbors the ulterior purpose [of] holding [the debtor] as hostage to extract money."). As the Complaint recounts in detail, "Reyes insisted upon the continuation of [Regan]'s prosecution, only relenting once he had successfully extorted a dubious debt from [Plaintiffs]." (Compl. ¶ 3.)

**B. The Motion Invents a "Different Subject Matter" Requirement**

In Illinois, "[t]he *only* elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive and (2) some act in

the use of legal process not proper in the regular prosecution of the proceedings." *Pace v. Timmermann's Ranch & Saddle Shop, Inc.*, 795 F.3d 748, 757 (7th Cir. 2015) (quoting *Kumar v. Bornstein*, 354 Ill. App. 3d 159, 165 (2004)) (emphasis in original). This Court has already held that the Complaint "states a plausible abuse of process claim" under the prevailing standard. *Regan*, 2025 LX 397256, at *31. Confronted with that ruling, the Motion grafts an atextual third element onto well-settled Illinois law.

The Motion's principal argument—that liability for abuse of process exists only where a party "compel[s] payment of a debt that is *different* than the subject matter of the litigation"—finds no support in its cited authority of *Community National Bank v. McCrery*, 156 Ill. App. 3d 580, 583 (1987). (Mot. Dismiss II at 3.) In dicta, *McCrery* quotes the Restatement (Second) of Torts § 682, which explains that "[t]he *usual* case" of abuse of process involves extortion "to compel [a party] to pay a different debt *or* to take some other action or refrain from it." Restatement (Second) of Torts § 682 cmt. b (A.L.I. 1977) (emphasis added). The Restatement is silent about a debt's subject matter, and its disjunctive phrasing signals that the use of process to compel payment of a "different debt" is just one example of a collateral objective. *Id*. Abuse of process may occur even when a creditor uses improper means to collect the *same* debt, such as executing on a judgment that has already been satisfied. *See* Restatement (Second) of Torts § 682 illus. 2 (A.L.I. 1977).

The Restatement (Third) of Torts further confirms that abuse of process exists even when the demanded property relates to the underlying matter. In a directly analogous illustration, an insurer who is not entitled to salvage property tells a

homeowner that he "knows a local prosecutor and will 'make Homeowner's life miserable' if cooperation is not forthcoming." Restatement (Third) of Torts: Liability for Economic Harm § 26 illus. 8 (A.L.I. 2020). He then asks the prosecutor to issue a search warrant for the homeowner's home for coercive purposes. The Restatement concludes that the insurer is subject to liability for abuse of process because "it sought the search warrant to intimidate Homeowner," not to vindicate any legitimate law-enforcement purpose. *Id*. Like the insurer in the Restatement, Reyes threatened to "contact the police" if Plaintiffs "refused to pay the full invoice." (Compl. ¶ 36.) Reyes proceeded to "initiate the criminal prosecution of Regan" to collect a check that "should not have been paid." (Mot. Dismiss II at 2.) This aligns with the principle that a "collateral objective … may involve an inappropriate aim in the same dispute in which the process issues." Restatement (Third) of Torts: Liability for Economic Harm § 26 cmt. e (A.L.I. 2020).

Unable to escape well-settled abuse of process law, SDR Defendants engage in a strained attempt to distinguish their misconduct. They concede that if Reyes had used the criminal process to extort "a separate vehicle" or to force participation "in a drug transaction," such acts would fall outside the process of the criminal case and constitute abuse. (Mot. Dismiss II at 2.) Yet, they claim that Reyes's use of criminal process to coerce payment of a fraudulent, disputed invoice is distinguishable because it "was the subject matter of the criminal cause." (*Id.*) As the Restatement illustrates, this is an empty distinction. Nor does the Motion cite any authority for the proposition that extortion is lawful when the demanded property is labeled "the subject matter

of the criminal cause" rather than a "separate vehicle." The proper question is whether "the process was invoked to achieve some … tangible result for which it was not designed: material gain to oneself, material injury to another, or the manipulation of another's behavior." Restatement (Third) of Torts: Liability for Economic Harm § 26 cmt. e (A.L.I. 2020). Forcing payment of a disputed debt under threat of conviction is precisely the sort of abuse that is actionable in Illinois.

### C. Extorting a Disputed Debt Is an Actionable "Collateral Thing"

Even if this Court looks solely to SDR Defendants' cited authorities, the result is unchanged. *McCrery* found no abuse of process because "the record indicate[d] that the process of the court was used only for its intended purpose, that is, obtaining a judgment of foreclosure. It was not used to compel the defendants to do some collateral thing which they could not legally be compelled to do." *McCrery*, 156 Ill. App. 3d at 584. The Complaint alleges the opposite: "Reyes knew … that there was an ongoing, genuine dispute over … SDR Garage's repairs," yet he sustained Regan's prosecution not to vindicate the law, but to use the threat of felony conviction "as leverage to extort" favorable settlement of an unjust, disputed repair invoice. (Compl. ¶¶ 201, 204.) As SDR Defendants admit, the Complaint alleges "that the check should not have been paid as it was for a fraudulent repair." (Mot. Dismiss II at 2.) A fraudulent, disputed debt is a "collateral thing" that cannot be coerced through criminal process.

The Motion's citation to *Johnson v. FirstKeyHomes LLC* similarly supports Plaintiffs: *Johnson* confirms that abuse of process exists where the plaintiff pleads that process "was used to accomplish some result … beyond [its] purview" or where

the defendant "required [the plaintiff] to do some collateral thing which [he] could not legally be compelled to do." *Johnson v. FirstKeyHomes LLC*, No. 23 C 5165, 2025 LX 160502, at *10 (N.D. Ill. Jan. 30, 2025) (Alonso, J.). The district court in *Johnson* dismissed the plaintiff's claim because she "plead[ed] no fact" showing any collateral purpose. According to the complaint in *Johnson*, the defendant had only sought to obtain possession of the premises—the purpose of an eviction—albeit with an alleged discriminatory animus. *Id*. The court granted leave to amend, instructing that a viable claim would require facts "demonstrating that the eviction action was used to reach some collateral result rather than an eviction itself." *Id*. at *11. Plaintiffs have pleaded precisely what *Johnson* requires. The Complaint alleges that Reyes used an arrest and prosecution not to vindicate the law—the purpose of criminal process—but to extort payment of a disputed debt, a result "beyond the purview of the process." *Id*. at *10. And it alleges that Reyes threatened Regan with a felony charge to pressure full payment of a disputed repair bill, a collateral thing that Regan "could not legally be compelled to do." *Id*. This satisfies *Johnson*'s abuse of process standard.

## III. Count VI States a Plausible Claim of IIED

The elements of IIED in Illinois are: "(1) that the defendant's conduct was extreme and outrageous; (2) that the defendant knew that there was a high probability that his conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress." *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 20 (1992) (citing *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988)). The Complaint plausibly alleges all three elements.

### A. The Control, Duration, and Unreasonableness of Reyes's Conduct Indicate That It Was Indeed Extreme and Outrageous

Three main factors determine whether conduct is "extreme and outrageous": control, duration, and an absence of reasonable belief in an objective's legitimacy. The Illinois Supreme Court has held that "[t]he more control [that] a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous." *McGrath*, 126 Ill. 2d at 86-87. Meritorious IIED claims "frequently involve[] a defendant who st[ands] in a position of power or authority relative to the plaintiff." *Id*. at 87. Namely, "police officers, school authorities, landlords, and collecting creditors have been held liable for extreme abuse of their position." Restatement (Second) of Torts § 46 cmt. e (A.L.I. 1965). This case involves a police officer and a collecting creditor—two positions that occupy the Restatement's short list of positions of power—abusing their power to extort money from Plaintiffs. Notably, Reyes possessed considerably more power than an ordinary creditor, since a creditor is usually not given free rein over a debtor's prosecution. (*See* Compl. ¶¶ 97-98, 206.)

Duration also favors Count VI—Reyes's wrongful conduct spanned multiple years. His tortious conduct began in 2022 when he attempted to defraud Plaintiffs, threatened to arrest them, and attempted to illegally repossess their car. (*See* Compl. ¶¶ 32-36, 43.) Reyes subsequently: (1) filed a false police report; (2) had Adolf send Regan a letter threatening "embarrassment" and "arrest"; (3) had Regan charged with a felony; and (4) "threat[ened] to prosecute [Impagliazzo] as well" if his demand went unmet. (Compl. ¶¶ 52, 220, 225.) Over a two year period, Reyes "repeated[ly] demand[ed] $10,322.24" as Regan's only escape from prolonged prosecution. (Compl.

¶ 226.) During that time, Regan was confined to Illinois on bond, Plaintiffs were deprived of the use of their Mazda, and Impagliazzo faced escalating anxiety that, given Reyes's credible threats, he would be charged next if Regan and Impagliazzo did not capitulate. Indeed, "Reyes and Adolf had demonstrated to plaintiffs that, due to their relationship and Adolf's position, they could initiate and maintain a criminal investigation and prosecution despite having shaky grounds for doing so." *Regan*, 2025 LX 397256, at *18. Reyes's tortious actions, like those in *McGrath*, formed a credible, "ongoing course of conduct" during which Plaintiffs' "anxiety should reasonably have been expected to intensify." *McGrath*, 126 Ill. 2d at 91.

Finally, "whether the defendant reasonably believed that his objective was legitimate" also constitutes "a substantial factor in evaluating the outrageousness of his conduct." *McGrath*, 126 Ill. 2d at 88. Reyes's knowledge of the parties' contractual agreement, the civil nature of the dispute, and his effort to conceal the Mazda's disrepair all foreclose a reasonable belief in his objective's legitimacy. Reyes was not just using the criminal process to extort a debt—he was using the criminal process to extort an *unjust* debt.[2]

**B. SDR Defendants Repeatedly Mischaracterize the Complaint**

Rather than address the Complaint's detailed allegations, the Motion rewrites

[2] The Motion claims that "[i]t is neither extreme nor outrageous to use the constitutionally protected court system to seek justice." (Mot. Dismiss II at 6.) Setting aside the statement's factual incompatibility with the Complaint, the Restatement makes clear that "[a]lthough an actor exercising legal rights is not liable … merely for exercising those rights, the actor is not immunized from liability if the conduct goes so far beyond what is necessary to exercise the right that it is extreme and outrageous." Restatement (Third) of Torts: Liability for Physical and Emotional Harm, § 46 cmt. e (A.L.I. 2012).

the narrative entirely. It depicts this case as a "relatively normal" criminal matter in which Regan "paid his debt" in restitution and endured only the ordinary—albeit "very distasteful and stressful"—anxieties of defending a criminal case. (Mot. Dismiss II at 5.) This framing depends on two unfounded premises: first, that the $10,322.24 invoice represented a valid debt rather than an extortionate demand; and second, that the prosecution resulted from a neutral "analysis" by law enforcement.[3] Such contentions "improperly challenge the factual accuracy of the allegations and are irrelevant at this stage of the litigation." *Sava v. 21st Century Spirits, LLC*, No. 22 C 6083, 2024 U.S. Dist. LEXIS 111496, at *17 (N.D. Ill. June 25, 2024) (Lefkow, J.).

First, the Motion unjustifiably assumes the existence of a valid debt. It claims that "a debt was owed" and that Regan "paid the complaining witness all that was due and got off the hook." (Mot. Dismiss II at 3, 5.) But this Court has acknowledged allegations refuting that premise. As the Court noted when applying the Rule 12(b)(6) standard, Reyes presented an invoice that was "more than three times the agreed price," and Regan "paid the price under protest and allegedly under threat that the Mazda would be sold immediately." *Regan*, 2025 LX 397256, at *3. Prior to payment, Reyes falsely "boasted that the car 'runs amazing.'" *Id*. And once Plaintiffs drove the Mazda away, they realized that Reyes had "grossly misrepresented" its condition.

[3] The Motion's premise—that Regan's payment undermines the outrageousness of Reyes's demand—would immunize successful extortion. Liability for IIED turns on "the extreme and outrageous character" of the defendant's conduct, not whether the plaintiff ultimately submitted to avoid the threatened harm. *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm, § 46 cmt. e (A.L.I. 2012) ("Whether an actor's conduct is extreme and outrageous depends on the facts of each case, including the relationship of the parties, whether the actor abused a position of authority over the other person, … and whether the conduct was repeated or prolonged.").

(Compl. ¶ 31.) Under settled Illinois law, "[f]raud in the inducement of a contract is a defense that renders the contract voidable at the election of the injured party." *Cannon v. Burge*, 752 F.3d 1079, 1092 (7th Cir. 2014). Because the Complaint alleges that Reyes utilized coercion and misrepresentation to induce payment, the premise that Regan satisfied a valid debt is legally and factually baseless.

Second, the Motion contends that law enforcement conducted a neutral review, stating that "the State's Attorney and [Officer Adolf] fully analyzed the case." (Mot. Dismiss II at 4.) That assertion cannot be squared with the Complaint, which alleges that Reyes and Adolf withheld key facts that would have revealed the dispute as civil. (*See* Compl. ¶¶ 46, 78.) Any "analysis" based on this one-sided account was not the impartial screening the Motion implies; it was the product of deliberate concealment. Indeed, the Motion's claim of a "full analysis" cannot be squared with its admission that Reyes "induced a police officer and Assistant State's Attorney to continue with that process"—inducement is the opposite of a neutral review. (Mot. Dismiss II at 2.)

## IV. Count III Is a Properly Pleaded Section 1983 Conspiracy Claim

The Motion argues that "Count III is defective by not explaining how … Reyes committed a violation under the Fourteenth Amendment." (Mot. Dismiss II at 7.) This reflects a fundamental misunderstanding of conspiracy law. A conspiracy claim does not require proof that each coconspirator personally committed every wrongful act; rather, the "very purpose of the conspiracy doctrine is to hold coconspirators liable for the substantive acts of those with whom they have entered a conspiracy." *Tillman v. Burge*, 813 F. Supp. 2d 946, 990 (N.D. Ill. 2011) (Pallmeyer, J.) (citing *Pinkerton v.*

*United States*, 328 U.S. 640, 647 (1946)).

Nor does Rule 10(b) support SDR Defendants' request for repleading Count III. Rule 10(b) directs the separation of claims "[i]f doing so would promote clarity." Fed. R. Civ. P. 10(b). This Court previously found that "the [C]omplaint here gives defendants the requisite fair notice. After incorporating the background facts, each count sets out additional and more specific facts supporting the claim pleaded in the count." *Regan*, 2025 LX 397256, at *23. Count III alleges a single claim of conspiracy. (*See* Compl. ¶¶ 129-62.) Rule 10(b) provides no basis to subdivide that claim.

## CONCLUSION

SDR Defendants describe their conduct as "within the bounds of a traditional criminal cause" and "part of that which makes our society civilized." (Mot. Dismiss II at 2, 5.) In one sense, they are correct about tradition: for much of Anglo-American history, criminal prosecutions were maintained by private parties rather than public prosecutors. One development marking a civilized criminal justice system was the rejection of that paradigm. As Chief Justice Roberts has observed, "[a]llegorical depictions of the law frequently show a figure wielding a sword—the sword of justice, to be used to smite those who violate the criminal laws. … A basic step in organizing a civilized society is to take that sword out of private hands and turn it over to an organized government, acting on behalf of all the people." *Robertson v. United States ex rel. Watson*, 560 U.S. 272, 282-83 (2010) (Roberts, C.J., dissenting from denial of certiorari). SDR Defendants seek to return that sword to private hands. Plaintiffs respectfully request that this Court reject such an attempt and deny the Motion.

Dated: November 24, 2025

Respectfully submitted,

/s/ *Cameron Regan*
Cameron Regan
1837 South Canalport Avenue
Chicago, Illinois 60616
+1 (312) 975-5776
regan@windypixel.com

/s/ *Louis Impagliazzo*
Louis Impagliazzo
1837 South Canalport Avenue
Chicago, Illinois 60616
+1 (415) 969-9993
impagliazzo@uchicago.edu