## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| CAMERON REGAN and<br>LOUIS IMPAGLIAZZO,<br><br>                   Plaintiffs,<br>     v.<br><br><br>CHRISTOPHER F. ADOLF,<br>VILLAGE OF LAKEMOOR,<br>FRANCIS JOSEPH Y. REYES, and<br>SDR GARAGE INC.,<br><br>                 Defendants. | Case No. 1:24-cv-08430<br><br>Hon. Joan B. Gottschall,<br>District Judge<br><br>Hon. Karyn L. Bass Ehler,<br>Magistrate Judge |

**PLAINTIFFS' JOINT MOTION TO COMPEL FINANCIAL DISCOVERY FROM DEFENDANTS FRANCIS JOSEPH Y. REYES AND SDR GARAGE INC.**

**INTRODUCTION**

This civil rights action arises from a conspiracy between a police officer and a business owner to fabricate evidence and co-opt the criminal process for the purpose of collecting a disputed debt. The alleged agreement led to the arrest and eighteen-month prosecution of Cameron Regan on a charge of felony deceptive practices—a charge the State dismissed with prejudice the morning after Regan paid Defendant SDR Garage Inc.'s monetary demand in full. The Court has noted that, accepting the Complaint as true, "a reasonable observer would find the conduct of the investigation and prosecution of Regan outrageous." *Regan v. Adolf*, No. 24-CV-8430, 2025 LX 397256, at *10 (N.D. Ill. Sep. 9, 2025). Punitive damages exist to deter and punish precisely such conduct, but they may do neither absent calibration to a defendant's actual net worth. Nevertheless, Defendants Francis Joseph Y. Reyes and SDR Garage Inc. ("SDR Defendants") continue to withhold records vital to an evaluation of their assets and liabilities. Reyes has instead tendered an opaque affidavit asserting a modest net worth, together with tax returns claiming ███████████.[1] Yet he simultaneously showcases exotic cars on social media and operates an enterprise that sells valuable imported vehicles—wealth that appears nowhere in SDR Defendants' present disclosures. To enable a proper assessment of punitive damages, Plaintiffs respectfully request that the Court compel the production of documents sufficient to

---

[1] In addition, SDR Garage Inc.'s ████████████████████████████████ ██████████████████████████████████████████████████████████████. (2022 Form 1120-S, Lines 7-8, 21, Ex. 8 at 2; 2023 Form 1120-S, Lines 7-8, 22, Ex. 8 at 11.) Yet in a March 7, 2023 letter to the Illinois Attorney General's Consumer Protection Bureau, Reyes described SDR Garage Inc. as the business he operates "to make a living to raise [his] family." (Letter from F. Reyes to Ill. Att'y Gen., Ex. 9 at 2.)

reveal SDR Defendants' current financial condition.

## PROCEDURAL HISTORY

Financial discovery in this case began in 2025, when Plaintiffs served requests for documents reflecting SDR Defendants' major assets and liabilities. In lieu of those documents, on May 28, 2025, Reyes provided a one-page affidavit in which he swore that his individual net worth was "between $245,000.00 and $275,000.00," qualifying that figure as "subject to change" and "a rough estimate." (Reyes Aff. ¶¶ 3, 5, Ex. 6.)

Seeking the principal records underlying that estimate, Plaintiffs served their Third Set of Requests for Production of Documents on Reyes ("Reyes RFPs") and SDR Garage Inc. ("SDR RFPs") on March 25, 2026. (Reyes RFPs, Ex. 1; SDR RFPs, Ex. 2.)[2] The April 24, 2026 deadline passed without any production, objection, or request for extension of time. When Plaintiff Impagliazzo inquired about the overdue discovery, counsel's paralegal stated that production would be made by April 30, 2026. (Email from S. Moreno to L. Impagliazzo, Apr. 28, 2026, Ex. 5 at 2.) On May 7, 2026, SDR Defendants served responses objecting to RFP Nos. 26-29 and 31-32 as "not relevant to any party's claim or defense" and "not proportional to the needs of this case," with additional objections variously asserting undue burden, privacy, and "improper pre-judgment asset discovery." (Resp. to Reyes RFPs, Ex. 3; Resp. to SDR RFPs, Ex. 4.)

On May 15, 2026, Plaintiffs held a one-hour videoconference with counsel for SDR Defendants in an attempt to resolve this dispute.[3] Plaintiffs offered concessions

---

[2] At issue are Reyes RFP Nos. 26-29 and 31-32, together with their SDR counterparts. The sets are materially identical and are thus cited collectively (e.g., "RFP No. 26").

[3] Pursuant to the Court's Standing Order, Plaintiffs attach declarations containing separate certificates of compliance with Local Rule 37.2. (Impagliazzo Decl. ¶ 2; Regan Decl. ¶ 2.)

on every contested request, including shorter timeframes and increased monetary thresholds. Although the parties reached agreement on RFP No. 30, counsel for SDR Defendants rejected every other proposed compromise, declined to substantiate any asserted burden, and told Plaintiffs to file a motion to compel. (Impagliazzo Decl. ¶ 6; Email from L. Impagliazzo to B. Horwitz, May 15, 2026, Ex. 5 at 6-7.)

## LEGAL STANDARD

When a party fails to respond to a discovery request, or when its response is insufficient, Rule 37 authorizes a motion to compel. *Anaya v. Birck*, No. 21-cv-02624, 2022 U.S. Dist. LEXIS 87066, at *6 (N.D. Ill. May 13, 2022) (citing Fed. R. Civ. P. 37(a)). On such a motion, the movant must demonstrate relevance. *Mendez v. City of Chi.*, No. 18-cv-6313, 2020 U.S. Dist. LEXIS 146598, at *8 (N.D. Ill. Aug. 14, 2020). This required initial showing is modest, however, because "relevance is construed broadly" under Rule 26. *Gonzalez v. Guevara*, No. 23-CV-14281, 2025 LX 483828, at *8 (N.D. Ill. Oct. 15, 2025). "If the discovery appears relevant, the party objecting to the discovery request bears the burden of showing why that request is improper." *Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-cv-02436, 2019 U.S. Dist. LEXIS 198880, at *4 (N.D. Ill. Nov. 15, 2019) (quoting *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2005 U.S. Dist. LEXIS 10686, at *2 (N.D. Ill. Apr. 28, 2005)).

## ARGUMENT

I.     **The Requested Discovery Is Relevant to Plaintiffs' Claims**

    A.     **Assets and Liabilities Are Fundamental to Punitive Damages**

Rule 26(b)(1) permits discovery of "any nonprivileged matter that is relevant

3

to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "If relevance is in doubt, courts should err on the side of permissive discovery." *Doe v. Loyola Univ. Chi.*, No. 18 CV 7335, 2020 U.S. Dist. LEXIS 12289, at *5 (N.D. Ill. Jan. 24, 2020) (Gilbert, Mag. J.) (quoting *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004)). But here, "there is no dispute—nor could there be—that [a] defendant['s] financial information is relevant to the issue of punitive damages." *Breuder v. Bd. of Trs.*, No. 15 CV 9323, 2021 U.S. Dist. LEXIS 12222, at *5 (N.D. Ill. Jan. 22, 2021); *accord Hernandez v. Dibiaso*, No. 23 C 15284, 2026 LX 170114, at *2 (N.D. Ill. Mar. 11, 2026) (noting that "[c]ourts in this circuit broadly agree" on the relevance of such discovery). Where courts broadly agree, however, SDR Defendants disagree: they object that their current financial condition constitutes "information that is not relevant to any party's claim or defense." (Resp. to Reyes RFP Nos. 26-29, 31-32, Ex. 3 at 2-4; Resp. to SDR RFP Nos. 26-29, 31-32, Ex. 4 at 2-4.) Whether SDR Defendants contend that punitive damages are unavailable here, or that their financial condition is uniquely irrelevant, their objection defies settled law.

"[E]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded." *City of Newport v. Fact Concerts*, 453 U.S. 247, 270 (1981). That wealth, in turn, is determined by net worth. Accordingly, when a plaintiff pleads a punitive damages claim, "there can be no doubt that net worth is discoverable … as it regards a matter that is relevant to the claim of a party." *Archie v. City of Chi.*, No. 19 CV 4838, 2023 U.S. Dist. LEXIS 38663, at *13 (N.D. Ill. Mar. 8, 2023) (quoting *Challenge Aspen v. King World Prods. Corp.*, No.

4

00 C 6868, 2001 U.S. Dist. LEXIS 18357, at *10 (N.D. Ill. Nov. 8, 2001)). Establishing the bounds of that discovery, Seventh Circuit "case law has defined the 'normal sense' of 'net worth' to mean assets minus liabilities." *Baldonado v. Wyeth*, No. 04 C 4312, 2012 U.S. Dist. LEXIS 59512, at *14 (N.D. Ill. Apr. 30, 2012) (St. Eve, J.) (citing *Sanders v. Jackson*, 209 F.3d 998, 999-1001 (7th Cir. 2000)). By mirroring the two components of the Seventh Circuit's orthodox definition of net worth—assets and liabilities—RFP Nos. 26-29 and 31-32 seek information that is plainly relevant.

**B.    The Complaint Pleads Plausible Claims for Punitive Damages**

When a punitive damages claim rests on "broad, conclusory allegations," courts will sometimes delay discovery of a defendant's financial condition. *See, e.g., Lanigan v. Babusch*, No. 11 C 3266, 2011 U.S. Dist. LEXIS 124416, at *10 (N.D. Ill. Oct. 27, 2011) (deferring discovery of net worth where the complaint pleaded a bare allegation that conduct "was intentional, malicious, willful and wanton"). The Complaint here, however, is *anything but* conclusory. Standing alone, its allegations support punitive damages under federal and state law. "Punitive damages are available in § 1983 cases only upon a showing of 'evil motive or intent, or ... reckless or callous indifference to the federally protected rights of others.'" *Thuet v. Bd. of Educ. of the City of Chi.*, No. 20 C 1369, 2022 U.S. Dist. LEXIS 210059, at *9 (N.D. Ill. Nov. 21, 2022) (alteration in original) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Similarly, Illinois permits punitive damages when a tort is "committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay v. Motorola,*

*Inc.*, 74 Ill. 2d 172, 186 (1978). "Evidence of willfulness can include … threats, fabricated complaints, … and other coercive tactics." *Sheils v. GateHouse Media, Inc.*, No. 12 CV 2766, 2015 U.S. Dist. LEXIS 145303, at *26 (N.D. Ill. Oct. 27, 2015) (citing *Brandon v. Anesthesia & Pain Mgmt. Assocs.*, 277 F.3d 936, 946-47 (7th Cir. 2002)).

The Complaint recounts a sequence of fraud, threats, and coercive tactics that warrant punitive damages. To induce Regan to write the check that Defendants later weaponized, Reyes "falsely boasted that the car 'runs amazing,'" while denying a test drive until he received the check. *Regan*, 2025 LX 397256, at *3. Once his deception was discovered, Reyes threatened to report Plaintiffs to the police unless they paid his demand. (Compl. ¶¶ 31-32, 36, Dkt. No. 1.) Reyes then escalated further: although he told Officer Adolf that he had "no reason to believe that [Regan] had committed a criminal offense" and that he "just wanted the money owed," he vowed to continue Regan's prosecution until Plaintiffs paid the disputed invoice in full. (Compl. ¶¶ 49, 137, 209-10.) As the Court recognized, the alleged conspiracy between Reyes and Officer Adolf used criminal process to "achieve [its] objective of getting both plaintiffs to pay up." *Regan*, 2025 LX 397256, at *20. Having forced Plaintiffs to "pay up," Reyes then attempted to extract a general liability release for himself and SDR Garage Inc. in exchange for abandoning the felony charge. (*See* Compl. ¶¶ 214-17.) Wielding criminal process to extort payment of a debt is precisely the willful and oppressive conduct that exposes an actor to punitive damages under both federal and state law.

## II.    The Requested Discovery Is Proportional to the Needs of This Case

Rule 26(b)(1) requires discovery to be not just relevant, but "proportional to the

6

needs of the case." Fed. R. Civ. P. 26(b)(1). Proportionality depends on six factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. "In principle, none of the proportionality factors should necessarily predominate … . In practice, however, the final two factors—the importance of the requested discovery and balancing discovery benefits against its burdens—are generally the most important and determinative of the issues." *Deal Genius, LLC v. O2Cool, LLC*, 682 F. Supp. 3d 727, 733 (N.D. Ill. 2023) (Favro, Spec. Master). Both of those factors weigh strongly in favor of production.

### A. The Requested Financial Discovery Is Vital to an Accurate Assessment of SDR Defendants' Punitive Damages Exposure

A defendant's personal financial records are not merely relevant, but "*vital* to the calculation of … punitive damages." *Yung-Ting Su v. Leechin Su*, No. 1:19-cv-07772, 2024 U.S. Dist. LEXIS 129630, at *17 (N.D. Ill. July 23, 2024) (emphasis added). Such information is vital because deterrence—the fundamental purpose of a punitive damages award—requires calibration to a defendant's actual wealth. As the Seventh Circuit has observed, "the poorer the defendant, the lower the penalty can be set and still deter wrongdoers in the same financial stratum." *Leister v. Dovetail, Inc.*, 546 F.3d 875, 883 (7th Cir. 2008) (Posner, J.) (citing *Kemezy v. Peters*, 79 F.3d 33, 35-36 (7th Cir. 1996)). Consequently, an unscrupulous defendant who artificially deflates their net worth can evade the deterrence that punitive damages are designed to achieve. Here, two distinct circumstances—the incompleteness of SDR Defendants'

7

existing disclosures and the restructuring of their finances during this litigation—threaten a severe understatement of their financial condition.

First, the current financial disclosures are materially incomplete. Thirteen months ago, Reyes swore his net worth was "between $245,000.00 and $275,000.00"—a range he claims to have calculated by subtracting liabilities from assets—without identifying a single asset or liability used in his calculation. (Reyes Aff. ¶¶ 3-5, Ex. 6.) His tax returns are equally unenlightening, claiming ██████████ for tax years 2022 to 2024. (Form 1040, Line 15, Ex. 7 at 2, 9, 17.) During that period, Reyes operated an active import business, selling over forty collectible Japanese vehicles.[4] (Impagliazzo Decl. ¶ 12.) Yet that sales activity appears nowhere in SDR Defendants' tax returns or in SDR Garage Inc.'s bank statements.[5] (*See* Exs. 7, 8, 12.)

Second, SDR Defendants have compounded their financial omissions through a mid-litigation corporate reorganization. In September 2025, SDR Garage Inc. announced it was "restructuring" its operations and "separat[ing]" its vehicle sales unit into SDR Imports LLC—a newly formed, single-member Wisconsin limited liability company. (Ex. 13 at 2; Ex. 14 at 2.) The companies' shared Facebook page—which

---

[4] The exact number of vehicles sold remains unknown, in part because Reyes deleted sales posts during this litigation and edited the captions of others "[s]o it doesn't look like [he] sold a car." (Impagliazzo Decl. ¶¶ 12-13; Reyes Dep. 57:23-58:5, 63:2-15, Ex. 10.) Should SDR Defendants fail to produce adequate alternative discovery to cure the destruction of this ESI, Plaintiffs will move for spoliation sanctions under Rule 37(e)(2).

[5] SDR Garage Inc.'s 2024 tax return reports ██████████. (SDR Garage Inc. 2024 Form 1120-S, Line 1a, Ex. 8 at 22.) ██████████ the market value of a *single* vehicle that Reyes sold that same year: a 1999 Nissan Skyline GT-R V-Spec. (*See* Ex. 11 at 2-3.) A vehicle of the same year and model recently realized a price of $162,501. (*1999 Nissan Skyline GT-R V-Spec*, Hagerty (June 30, 2026), https://www.hagerty.com/valuation-tools/past-sales/1999-nissan-skyline/BNR34003597/02b468f8-4a84-406e-8a43-04f0806135ff [https://perma.cc/QG6C-D3ZK].)

Reyes controls—touts the arrangement as "2 Businesses. 2 Legal Entities. 1 Brand." (Reyes Dep. 55:1-3, Ex. 10; Ex. 13 at 2.) Even accepting SDR Defendants' self-reported figures, their mid-litigation transfer of a primary revenue stream independently warrants "look[ing] behind the balance sheet," because whether a party "fraudulently conveyed assets or increased its liabilities obviously affects its net worth." *Smith v. Greystone All. LLC*, No. 09 C 5585, 2011 U.S. Dist. LEXIS 95368, at *3-4 (N.D. Ill. Aug. 23, 2011). Without additional financial records, the factfinder will be unable to deduce whether, and to what extent, SDR Defendants have understated their wealth.

## B. The Benefit Derived from Discovery of SDR Defendants' Current Financial Condition Outweighs Any Unsubstantiated Burden

Given SDR Defendants' diversion of assets, the need for an accurate financial assessment outweighs any purported undue burden of production. Moreover, timely financial discovery would serve the interests of the Court as well. Prompt disclosure "will ensure that in the event there are disputes about the adequacy of [D]efendants' responses, those disputes can be resolved well in advance of trial, without requiring the attorneys and the Court to devote time [on] the eve of trial to discovery motions and last-minute depositions." *Challenge Aspen*, 2001 U.S. Dist. LEXIS 18357, at *10-11. In a case marked by multiple discovery disputes, that benefit could prove to be substantial. Net worth discovery "may also promote settlement": if SDR Defendants' financial condition is shown to be modest, it could cause Plaintiffs to reassess their settlement leverage and adjust their position accordingly. *Id.* at *11.

Against these benefits, SDR Defendants offer only bare assertions of undue burden; however, "burden and expense should be supported by hard information and

not by unsupported assertions." *Deal Genius*, 682 F. Supp. 3d at 733 & n.25 (quoting The Sedona Conference, *Commentary on Proportionality in Electronic Discovery*, 18 Sedona Conf. J. 141, 167 (2017)). In *Deal Genius*, the court overruled an objection of undue burden that was supported by "no … evidence or argument." *Id*. at 736. Here, SDR Defendants object to almost every request as being "overly broad" and "unduly burdensome," yet they fail to identify the number of accounts implicated, the volume of documents to be gathered, or any expected time or expense. At the parties' Rule 37.2 conference, Plaintiffs asked SDR Defendants' counsel to substantiate the undue burden objection, but counsel declined. (Impagliazzo Decl. ¶ 6; Ex. 5 at 6-7.)

Regardless, no undue burden is apparent from the requests at issue. Although compliance may require effort, "[d]iscovery is almost always costly and difficult; it is, by its very nature, burdensome and often intrusive. But that does not make discovery improper. It only becomes so when it is *unduly* burdensome." *Deal Genius, LLC v. O2Cool, LLC*, No. 21 C 2046, 2022 U.S. Dist. LEXIS 53131, at *8-9 (N.D. Ill. Mar. 24, 2022) (Cole, Mag. J.) (citing Fed. R. Civ. P. 26(b)(1)). RFP Nos. 26-29 and 31-32 seek "documents sufficient to show" certain assets and liabilities, not all documents, and set dollar thresholds excluding lower-value items. (*See* Ex. 1 at 3-4; Ex. 2 at 3-4.) In most instances, they require no more than the production of existing monthly account statements—an obligation far less burdensome than the financial discovery courts routinely compel. In *Archie*—another 42 U.S.C. § 1983 action—the court ordered the production of tax returns along with "a list (with *all* supporting documentation) of personal and household expenses." *Archie*, 2023 U.S. Dist. LEXIS 38663, at *18

(emphasis added). The six requests here require no such exhaustive documentation.

### C.     The Temporal Scope of the Requests Is Proportional

RFP Nos. 26-29 seek documents from March 1, 2024, to March 1, 2026. (*See* App. A.) Courts in this circuit find a two-year window for financial records to be proportional to establishing a defendant's current financial condition. *See Archie*, 2023 U.S. Dist. LEXIS 38663, at *16-17 (collecting cases). Indeed, some courts in this district have compelled even broader disclosures. *See, e.g., Amarillo v. Artis Senior Living Mgmt. LLC*, No. 21 CV 2422, 2022 U.S. Dist. LEXIS 39485, at *12-13 (N.D. Ill. Mar. 7, 2022) (ordering the production of three years of financial records). Because this case began in September 2024, a two-year period is necessary to discover SDR Defendants' assets and liabilities before litigation supplied them with an incentive to restructure their finances. Records postdating this litigation, by contrast, would reflect a net worth that SDR Defendants have had ample opportunity to deflate.

## III.     SDR Defendants' Remaining Objections Should Be Overruled

As narrowed, the requests at issue seek only those documents vital to estimate SDR Defendants' net worth. (App. A.) SDR Defendants' objections—largely repeated verbatim for each RFP—are unsupported and unavailing, and should be overruled.

### A.     RFP Nos. 26-28 (Liquid Assets)

RFP Nos. 27 and 28 request statements showing each account's beginning and ending balance, along with the date, amount, and counterparty of any deposit or withdrawal exceeding $1,000. RFP No. 26 seeks analogous information for credit cards and lines of credit: monthly expenditure, and the date, amount, and funding source

11

of each payment exceeding $1,000. These documents would reveal the balances, activity, and funding sources of SDR Defendants' financial accounts—information vital to determining their net worth. *See supra* § II.A. Courts in this district have ordered financial discovery far more thorough, including complete accountings of a defendant's household expenses. *See Archie*, 2023 U.S. Dist. LEXIS 38663, at *18. Measured against that standard, Plaintiffs' requests—which forgo itemized records of individual purchases, regardless of value—are notably restrained.

Despite the requests' narrow scope, SDR Defendants have produced nothing in response, asserting that the discovery "bear[s] no relationship to any claim or defense in this litigation." But the few records they previously produced prove otherwise: the four monthly statements for SDR Garage Inc.'s Chase checking account confirm the existence of other accounts, showing transfers to a checking account ending in 5110 and a PayPal account, ███████████████.[6] (Ex. 7 at 24; *see, e.g.,* Ex. 12 at 4, 11, 16, 22.) SDR Defendants should not be permitted to rely on statements portraying poverty while withholding others that would reveal their true financial condition.

As for RFP No. 27's request for records sufficient to show large cryptocurrency and stored-value transactions, it too is grounded in SDR Defendants' own conduct. SDR Garage Inc. has advertised cryptocurrency as an accepted payment method, yet no produced bank statement reflects any cryptocurrency activity. (*See, e.g.,* Ex. 15.)

---

[6] In just the four months covered by the bank statements, SDR Garage Inc. moved more than $40,000 into the 5110 account across thirteen separate transfers of $1,000 or more—including individual transfers of $8,500, $8,000, and $5,000 (twice). (Ex. 12 at 4-5, 11-12, 16-18, 22-23.) Another $15,000 exited the account via a single withdrawal on February 21, 2025. (Ex. 12 at 12.) These outflows, moreover, are dwarfed by the proceeds of SDR Defendants' vehicle sales, which appear nowhere in the account's deposits. *See supra* § II.A and notes 4-5.

## B.     RFP No. 29 (Asset Dispositions)

RFP No. 29 seeks documents sufficient to show the disposition of assets whose purchase price or fair market value exceeded $5,000. SDR Defendants object that this constitutes "prejudgment asset discovery." (Ex. 3 at 3; Ex. 4 at 3.) But Plaintiffs do not seek attachment—only discovery of the transfers through which SDR Defendants may have deflated their net worth. As noted, whether a defendant has fraudulently conveyed assets "obviously affects" their net worth. *Supra* § II.A.

Moreover, any burden in producing these records is self-inflicted. During the relevant period, SDR Defendants sold rare, imported vehicles, yet they have produced no records of those sales. The most convenient evidence of those transactions—SDR Defendants' social media activity advertising and confirming sales—no longer exists because Reyes destroyed those posts during this litigation. As a result, transactional records may be the sole surviving evidence. A party cannot protest the added burden of producing alternative records when that burden exists because of his own actions. *Cf. Batchelor v. City of Chi.*, No. 18 CV 8513, 2020 U.S. Dist. LEXIS 269061, at *27-28 (N.D. Ill. Nov. 17, 2020) (overruling objection of undue burden because the burden was "largely one of the City's own making").

## C.     RFP No. 31 (Ownership Interests)

RFP No. 31 seeks only documents sufficient to identify the entities in which SDR Defendants currently hold an ownership interest of ten percent or more, and to show the nature and percentage of each interest. An ownership interest is an asset like any other, and responsive documents—such as operating agreements and arti-

cles of organization—should be trivial to gather and produce. SDR Defendants have nevertheless disclosed nothing, referring Plaintiffs instead to an unspecified prior production. (Ex. 3 at 3; Ex. 4 at 3.) That response is improper because it neither identifies any documents nor states whether any documents are being withheld. *See* Fed. R. Civ. P. 34(b)(2)(C), (E)(i). The objection's only apparent function is to obstruct discovery into the ownership of SDR Imports LLC.

### D.    RFP No. 32 (Liabilities)

RFP No. 32 seeks documents sufficient to show SDR Defendants' outstanding indebtedness exceeding $10,000, including each creditor and each obligation's current balance. Reyes attests that he computed his net worth as the difference between his assets and his liabilities; liabilities are thus a mathematical basis of his affidavit. (Reyes Aff. ¶ 4, Ex. 6.) Until Reyes documents his liabilities, his attestation is untestable, since any additional asset could be reconciled by positing an offsetting liability.

### E.    RFP Nos. 29 and 32 Require No Prima Facie Showing

SDR Defendants object to RFP Nos. 29 and 32 as prejudgment asset discovery, improper "absent a judgment, attachment order, or demonstrated basis for such relief." (Ex. 3 at 3-4; Ex. 4 at 3-4.) But "[t]he discovery of financial information relevant to a punitive damages claim, including financial information related to the defendant's net worth, is permissible under the Federal Rules of Civil Procedure, even where a plaintiff has yet to prove a prima facie case showing it is entitled to punitive damages." *Greystone*, 2011 U.S. Dist. LEXIS 95368, at *3. Indeed, when a claim for punitive damages survives a motion to dismiss, "that survival is a sufficient foundation

14

for financial information discovery to be conducted on a normal, non-deferred schedule." *Hernandez*, 2026 LX 170114, at *3. Where the court has "given wings" to such a claim by describing a defendant's conduct as extreme at the pleading stage, deferral of net worth discovery is particularly unwarranted. *See Archie*, 2023 U.S. Dist. LEXIS 38663, at *14-15. Here, the Court not only upheld Plaintiffs' punitive damages claims but characterized the alleged conduct in language closely paralleling *Archie*. *Compare Archie v. City of Chi.*, No. 19 CV 4838, 2020 U.S. Dist. LEXIS 176221, at *22 (N.D. Ill. Sep. 25, 2020) (observing the conduct "would outrage anyone living in a civilized society"), *with Regan*, 2025 LX 397256, at *10 (noting that "a reasonable observer would find the conduct of the investigation and prosecution of Regan outrageous"). Thus, SDR Defendants' demand for a "demonstrated basis" itself lacks basis.

## F.    The Confidentiality Order Addresses Any Privacy Concerns

Finally, SDR Defendants object to RFP Nos. 26-28 and 32 on privacy grounds. (Ex. 3 at 2-4; Ex. 4 at 2-4.) Any privacy concern, however, is addressed by this case's Agreed Confidentiality Order. (*See* Dkt. No. 102.) SDR Defendants have produced tax returns—records far more sensitive than financial statements—under that Order's protections, and courts in this district routinely compel the production of financial documents subject to such orders. *See Amarillo*, 2022 U.S. Dist. LEXIS 39485, at *13.

### CONCLUSION

Plaintiffs respectfully request that the Court order SDR Defendants to produce documents responsive to RFP Nos. 26-29 and 31-32, as narrowed, within thirty days. Plaintiffs are not seeking costs in connection with this Motion to Compel.

Dated: July 8, 2026

Respectfully submitted,

/s/ *Louis Impagliazzo*
Louis Impagliazzo
1837 South Canalport Avenue
Chicago, Illinois 60616
+1 (415) 969-9993
impagliazzo@uchicago.edu

/s/ *Cameron Regan*
Cameron Regan
1837 South Canalport Avenue
Chicago, Illinois 60616
+1 (312) 975-5776
regan@windypixel.com

## CERTIFICATE OF SERVICE

On July 8, 2026, I served the provisionally sealed, unredacted version of Plaintiffs' Joint Motion to Compel Financial Discovery and unredacted Exhibits 7 and 8 by email on the following:

Cameron Regan
1837 South Canalport Avenue
Chicago, Illinois 60616
+1 (312) 975-5776
regan@windypixel.com

Eric A. Krumdick
Marzullo & Associates
161 North Clark Street, Ste 800
Chicago, Illinois 60601
+1 (312) 458-6500
ekrumdic@travelers.com
*Counsel for Defendants Christopher F. Adolf and Village of Lakemoor*

Blake Horwitz
Hayden Dinges
The Blake Horwitz Law Firm
216 South Jefferson Street, Ste 101
Chicago, Illinois 60661
+1 (312) 676-2100
bhorwitz@bhlfattorneys.com
hdinges@bhlfattorneys.com
*Counsel for Defendants Francis Joseph Y. Reyes and SDR Garage Inc.*

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 8, 2026

/s/ *Louis Impagliazzo*
Louis Impagliazzo
1837 South Canalport Avenue
Chicago, Illinois 60616
+1 (415) 969-9993
impagliazzo@uchicago.edu